# Dunbar *v.* Frazer.

*Application for Mandamus to Probate Judge, refusing to grant License for Retailing Spirituous Liquors.*

1.  *Circuit Court; original and appellate jurisdiction.*—The original jurisdiction of the Circuit Court, in "all matters civil and criminal," is derived from the constitution (Art. VI, § 5), and can not be abridged by statute; but its appellate or supervisory jurisdiction over inferior tribunals is of statutory creation (Code, § 657), and is limited by the terms and purposes of the grant.

2.  *Same ; mandamus to probate judge.*—The Circuit Court has no jurisdiction, under either constitutional or statutory provisions, to issue a *mandamus* to the judge of probate of a county in another judicial circuit.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.      •

The appellant in this case, F. M. Dunbar, filed his petition under oath, addressed to Hon. JOHN P. HUBBARD, the presiding judge of the second judicial circuit, asking a *mandamus* to Hon. T. L. FRAZER, the judge of probate of Lee county, requiring him to issue to the petitioner a license to retail spirituous liquors in Opelika.  On the filing of the petition, an alternative writ of *mandamus* was ordered by Judge Hubbard, returnable before the Circuit Court of Montgomery.  Judge Frazer appeared in answer to the writ, and pleaded in abatement his residence and freehold in Lee county.  A demurrer was interposed to this plea, but the record does not show any ruling upon it by the court.  Issue was joined on the plea, and on the evidence adduced, under the charge of the court, the jury returned a verdict for the defendant ; and the court thereupon rendered judgment abating the petition at the cost of the petitioner.  The judgment is now assiged as error.

TROY, TOMPKINS & LONDON, and GEO. P. HARRISON, for the appellant.       .

WM. H. BARNES, and WM. J. SAMFORD, *contra.*

CLOPTON, J.—No controversy is raised respecting the power of a *judge* of the Circuit Court to grant an alternative writ of *mandamus*, returnable to the Circuit Court, outside of the judicial circuit of which he is judge.  The question is,

34

[Dunbar v. Frazer.]

whether the Circuit Court held in the county of Montgomery has jurisdiction to grant a peremptory *mandamus*, to compel the judge of probate of Lee county to issue to appellant a license to retail liquors in the latter county, the two counties being in different judicial circuits. The contention in the Circuit Court arose on a plea in abatement to the jurisdiction of the court, setting up that the appellee is a freeholder and householder of this State, and has a permanent residence in the county of Lee. A demurrer was interposed to the plea, but no action of the court thereon appears from the record. On issue joined on the plea the trial was had, and the verdict of the jury being in favor of the defendant, the petition was abated by order of the court. We do not propose to consider whether the statute, exempting freeholders and householders from liability to be sued out of the county of their residence, applies in cases of *mandamus*; for, conceding that it does not, and that the case was tried on an immaterial issue, if the court has no jurisdiction to grant the *mandamus*, the error is without injury.

The petitioner does not invoke the exercise of the jurisdiction of the court granted by the constitution. The constitutional grant is, "original jurisdiction in all matters, civil and criminal, within the State, not otherwise excepted in the constitution,"— original jurisdiction of the subject-matter. It is original, as distinguished from appellate, or supervisory; and general, as distinguished from special, or limited. The jurisdiction of the subject-matter, resting on the organic law, is co-extensive with the sovereignty that created it, which is co-extensive with the territorial limits of the State; and it can not be abridged, though it may be enlarged, by statute. It can not be conferred by the legislature on any other court to the exclusion of the Circuit Court, or on one Circuit Court exclusive of the others. All the Circuit Courts have concurrent jurisdiction of the subject-matter. But the constitution does not grant jurisdiction of the case, or of the person. The cases, arising under the constitutional grant, are distributed by the General Assembly among the different Circuit Courts according to locality, and jurisdiction of the person is acquired by proper service of legal process, or by consent; and such jurisdiction, when acquired, is exclusive. The distinction between jurisdiction of the subject-matter, and the exercise of the jurisdiction, must be observed. While the jurisdiction of the subject-matter is co-extensive with the State, the territorial limits in which it may be exercised is left for legislative creation and regulation. The power of the Circuit Court of Montgomery to grant the *mandamus* cannot be founded on the constitutional grant of jurisdiction, or on the statutes prescribing the cases and the territorial limits in which

it may be exercised.—*Coltart v. Allen*, 40 Ala. 155 ; *Wright v. Ware*, 50 Ala. 549.

The Circuit Court possesses appellate and supervisory jurisdiction, but not by reason of its distinctive organization, nor of any inherent power; neither is the constitution its source.    It is of statutory creation.    If the Circuit Court of Montgomery county has authority to grant the *mandamus* petitioned, it must be derived from section 657 of the Code, which provides, that the Circuit Court has authority "to exercise a general superintendence of all inferior jurisdictions."    The inquiry, therefore, must be addressed to the intention and meaning of the statute, respecting the territorial limits within which the general superintendence may be exercised.    A proper understanding of the statute will be aided by construing it *in pari materia* with other statutes of similar import, relating to the appellate jurisdiction of the Circuit Court.    The same section of the Code confers on the Circuit Court authority "to exercise appellate jurisdiction of all civil actions cognizable before a justice, and in such other cases as may be provided by law ;" and other statutes allow an appeal to the Circuit Court in certain cases from the orders and decrees of the Court of Probate.    The section under consideration constitutes a part of the chapter of the Code which divides the State into judicial circuits, fixes the times of holding courts in the several counties, provides for the election of a judge of each circuit, defines the jurisdiction and authority of the court, and of the judges as distinguished from the court, prescribes the duties and authority of the clerk, and makes other regulations regarding the machinery of the court, and its business. Whilst the provisions of the chapter are applicable to each Circuit Court in the State, they have a special and several reference to the exercise of the jurisdiction of the Circuit Court held in the county, or as constituting a part of a separate judicial circuit.

The constitution wisely provides : "The State shall be divided by the General Assembly into convenient circuits, not to exceed eight in number, unless increased by a vote of two thirds of the members of each house of the General Assembly ; and no circuit shall contain less than three, nor more than twelve counties; and for each circuit there shall be chosen a judge, who shall, for one year next preceding his election, and during his continuance in office, reside in the circuit for which he is elected."    The power is vested in the legislature to enlarge the number of circuits from time to time, as the increasing population, the developed and growing industries, the security and protection of privite rights, and the due and speedy administration of the law might demand.    The judge is elected by the qualified electors of the circuit, is by the constitution a conser-

[Dunbar v. Frazer.]

vator of the peace within the circuit, and, though a State offi-
cer, is specially the judge of the circuit for which he is elected.
Independently of constitutional or statutory authority, he has
no power to perform any judicial act outside of his circuit.
The constitution further commands, that a Circuit Court shall
be held in each county at least twice in every year.    When a
county is organized, its boundaries fixed, and a Circuit Court is
constituted to be held therein, the limits within which such
Circuit Court may exercise its jurisdiction are prescribed, in
accordance with the provisions of the constitution.    Any judg-
ment rendered, or judicial proceedings had, at a time and place
other than authorized by law, are void.—*Gurlick v. Dunn*, 42
Ala. 404.    If the legislature confers appellate and supervisory
power on the Circuit Court in addition to the constitutional
grant, it is reasonable to infer, if not otherwise expressed, that
the intention is, the exercise of such authority shall be confined
within the same limits which restrict the exercise of the origi-
nal jurisdiction—that is, the *exercise* of the two jurisdictions
shall be co-extensive.

The inferior jurisdictions, ordinarily, are circumscribed and
localized.    The county officers, without express authority, can
do no official act without the county.    Their judgments to be
reviewed on appeal are rendered, and the acts to be commanded
by *mandamus* are done, in the county.    The judgments and
orders of the supervising court are to be enforced in the coun-
ty, and by its officers.    The cause of action, if we may so term
it, arises and is located in the county.    The official acts of the
officers, subject to supervision, are not transitory, and do not
follow their persons.    The general superintendency of such in-
ferior jurisdictions is also local in its nature.    The authority is
"to *exercise* a general superintendence;" and the statute should
be construed as vesting the authority exclusively in the Circuit
Court which by the constitution and the statutes is empowered
to exercise exclusive jurisdiction of cases in the county in which
such inferior jurisdiction is located; otherwise, there would be
a Circuit Court having exclusive original jurirdiction of cases,
and with other Circuit Courts concurrent supervisory jurisdic-
tion of inferior courts in the same territory.

There are as many Circuit Courts as there are counties in the
State.    The maintenance of the jurisdiction of the Circuit Court
of Montgomery county necessitates a construction of the statute,
which operates to confer on all the Circuit Courts concurrent
appellate jurisdiction of all the inferior jurisdictions in the State
without reference to locality, and may tend to produce conflicts
of jurisdiction; a construction which would enable a Circuit
Court to take jurisdiction by appeal of a civil action cognizable
before a justice of the peace, and try it *de novo* in some remote

[Loeb v. McCullough.]

county; whereas, by statute, the defendant could not originally have been sued out of the precinct of his residence, or of that in which the debt was created, or cause of action arose; a construction which authorizes each and all the Circuit Courts to bring before them, in distant parts of the State, the officers of inferior jurisdictions, away from their official business and duties, in detriment of the rights of the people and the due execution of the laws, and endangering the public interests. Considerations of public policy forbid such construction; and there should be plain words, or a clear and compelled implication, before a court is justified in giving a construction of a statute which might lead to such consequences. Our construction harmonizes with the spirit and policy of the constitution and of the statutes. We, therefore, conclude that the Circuit Court of Montgomery county has no authority to grant the *mandamus* sought by the petitioner..

There is no error in the judgment dismissing the petition, and it is affirmed.