# *Ex Parte* City of Birmingham.

### Certiorari to Review Action of Public Service Commission.

(Decided January 18, 1917.  74 South. 51.)

1. **Public Service Commissions; Certiorari; Scope of Review.**—On certiorari to review a proceeding of the public service commission where the court has not before it the evidence or facts upon which the commission proceeded, its inquiry is limited to whether the commission had jurisdiction and the regularity of such proceeding, as it can only answer the questions raised on the face of the record.

2. **Constitutional Law; Legislative Powers; Delegation.**—Acts 1915, p. 268, conferring upon the public service commission jurisdiction to determine whether a sale, conveyance, or lease of the property and franchises of a public utility is consistent with the interests of the public, was a proper delegation of the legislative power, since while the legislature cannot delegate its power to make a law it can make a law to delegate a power to determine some fact or state of things upon which the law makes its own action depend.

3. **Constitutional Law; Validity of Statute.**—A statute need not enjoin obedience to the Constitution, as the inhibition of the Constitution will be read into the statute and given effect.

4. **Public Service Commissions; Powers; Sale of Public Utilities; Objections; Determination.**—Acts 1915, p. 268, conferring on the public service commission power to authorize transfer of property and franchises of public utilities, expressly includes the provisions of Const., Sec. 220, providing that no person, firm, etc., shall be authorized or permitted to use streets or public places of any city or town for the construction or operation of a public utility or private enterprise without the consent of the proper authorities of such city or town.  Held, that neither the constitutional provision nor an objection on the part of a city would affect the powers of the commission under said act to determine whether a conveyance of the property of a public utility together with its franchises was "consistent with the interests of the public;" but the question of the city's power to veto the proposed transfer must be tried in the customary courts, since while the commission exercises a quasi judicial power, it does not enforce rights or redress wrongs, but is only authorized to ascertain a fact upon which a statutory license depends.

5. **Constitutional Law; Special Privileges; Franchises in Streets.**—The assent of the public service commission under Acts 1915, p. 268, to the sale

of the franchise of a public utility using the streets of a city does not violate Const., Sec. 22, inhibiting any law making an exclusive grant of a special privilege.

6. **Monopolies; Consolidation of Street Railroads; Assent of Public Service Commission.**—The act of the public service commission under Acts 1915, p. 268, in assenting to a transfer of the franchise and property of a street railway, though it effected a consolidation of parallel and competing lines, is not violative of Const., Sec. 103, which requires that the Legislature provide by law for the regulation, prohibition, or reasonable restraint of common carriers, partnerships, associations, trusts, monopolies to prevent them from making scarce articles of necessity, etc., or prevent reasonable competition, since in the strictest sense of the word it does not create a "monopoly," which is an exclusive right granted to one person or a class of persons of something which was before of common right.

7. **Street Railroads; Consolidation; Statutory Provisions.**—Code 1907, Sec. 3481, which permits the consolidation of railroad corporations only in case their lines admit the passage of cars continuously or without break or interruption directly or by means of intervening lines, construed with Acts 1915, p. 268, still remains in effect as evidencing the public policy of the state that in the absence of the approval of the public service commission there shall be no such consolidation, but has been limited by the act of 1915 to that extent.

8. **Public Service Commissions; Certiorari; Jurisdiction.**—On certiorari to review a proceeding of the public service commission approving the transfer of the property and franchises of a public utility under Acts 1915, p. 268, the supreme court has neither original nor appellate jurisdiction to pass upon the city's objections to approval of the proposed consolidation.

ORIGINAL petition in Supreme Court.

Certiorari by the City of Birmingham to review the records and proceedings had before the Alabama Public Service Commission on the joint application of the Birmingham Railway, Light & Power Company and others for the approval by the commission of a proposed sale and conveyance of properties and franchises. Order of commission approved.

M. M. ULLMAN and JAMES WEATHERLY for petitioners. WILLIAM L. MARTIN, Attorney General, LAWRENCE E. BROWN, Assistant Attorney General, FORNEY JOHNSTON, E. D. SMITH, WILLIAM B. WHITE and TILLMAN, BRADLEY & MORROW, contra.

SAYRE, J.—This is an application by the municipal authorities of the city of Birmingham to review the record of a proceeding had before the Alabama Public Service Commission on the joint application of the Birmingham Railway, Light & Power Company, the Birmingham Tidewater Railway Company, and J. D. Kirkpatrick, for the commission's approval of a proposed

sale and conveyance of all the properties and franchises formerly owned and exercised by the Birmingham, Ensley & Bessemer Railroad Company to the Birmingham Railway, Light & Power Company on terms the substance of which will be presently stated.

By the application to the Public Service Commission it was made to appear that at a sale ordered by the District Court of the United States at Birmingham, Kirkpatrick, as agent for a committee of the holders of the mortgage bonds of the Ensley Company, so to speak of the Birmingham, Ensley & Bessemer Railroad Company, had bid in the properties and franchises of that company and proposed to assign all his rights and obligations as such bidder to the Birmingham Company, so to speak of the Birmingham Railway, Light & Power Company, and the Tidewater Company, jointly, the plan, to state it roughly, being that, in consideration that the Birmingham Company would guarantee the committee's bonds, the properties and franchises purchased for them by Kirkpatrick should be assigned to the Tidewater Company, a corporation organized for the purpose of taking over and operating the properties and business of the Ensley Company, and all the capital stock of the Tidewater Company transferred and assigned to the Birmingham Company. The city of Birmingham was allowed to intervene by way of formal protest in which several objections were taken to the proposed consolidation, but the commission, after hearing the evidence, gave its approval to the plan proposed, after which this application for a review of the record of the proceeding by the common-law writ of certiorari.

The Public Service Commission which succeeded to all the powers and jurisdiction of the Railroad Commission by virtue of the act approved September 25, 1915 (Gen. Acts, p. 865), in giving its approval, acted under authority of section 1 of the act approved August 6, 1915 (Gen. Acts, p. 268), providing as follows:

"Section 1. The property of a public utility, together with its franchises, contracts, business, good will and other assets, may be lawfully sold and conveyed or leased to, and thereafter lawfully held, enjoyed and operated by, a purchaser then engaged or proposing to engage in the business conducted by such public utility; or the capital stock of a corporation owning and operating a public utility may be lawfully sold and conveyed to,

and thereafter lawfully held and enjoyed by, a purchaser whether or not such purchaser is engaged, or proposes to engage in the business conducted by such pubic utility; whenever such sale and conveyance or lease of the property, franchises, contracts, good will and other assets of such public utility, or whenever the sale and conveyance of the capital stock of such corporation, is consistent with the interests of the public. In cases where the property of the public utility proposed to be sold and conveyed or leased lies within, and the franchises and public duties thereof relate to, a single municipality, and in cases where such a public utility is owned by a corporation, and its capital stock is proposed to be sold, the question whether the proposed sale and conveyance or lease is consistent with the interests of the public shall be determined by the governing body of such municipality, and also by the Railroad Commission of Alabama, and if the governing body of such municipality and the Railroad Commission of Alabama shall each determine that the proposed sale and conveyance, or lease, is consistent with the interests of the public, their determination shall be shown by their approval of the proposed sale and conveyance or lease; in all other cases the question whether the proposed sale and conveyance or lease is consistent with the interests of the public shall be determined by the Railroad Commission of Alabama, and if the Railroad Commission of Alabama determines that the proposed sale and conveyance or lease is consistent with the interests of the public, its determination shall be shown by its approval of the proposed sale and conveyance or lease"—and more of no present concern.

In the intervention, which appears as a part of the record certified by the commission to this court, it was alleged that the line of railway that had been owned and operated by the Ensley Company lay partly within and partly without the corporate limits of the city of Birmingham, that it was practically a parallel and competing line with lines of railway owned and operated by the Birmingham Company, and that the municipal franchise under which it had been constructed and operated along the streets of the city contained the following stipulation: "The franchise hereby granted shall not be transferred or assigned, in whole or in part, to any parallel or competitive line without the consent of the city of Birmingham, directly or indirectly, either by purchase, consolidation or merger; and if this condition is violated or evaded, the city council reserves the

right, on due notice, to annul the entire franchise. Provided, however, that this section shall not be construed to prevent the grantee or its assigns from conveying this franchise to any trustee or mortgagee and to his, their or its assigns, as security for bonds issued in good faith and without any purpose or intent to evade the conditions imposed by this section."

And upon these allegations and upon some propositions of law, to be stated and considered, the city denies the constitutional authority, and, however that may be determined, the propriety in any event, of the commission's action in the premises.

(1) In this proceeding the court can only answer the questions raised on the face of the record. Even though it be conceded that the result of the considerations of fact upon which it must be assumed the commission's approval was based might have been reviewed by certiorari with a bill of exceptions, as in *Ex parte Buckley*, 53 Ala. 42, and that the municipal authorities of the city of Birmingham have an interest in the question proposed by the petition to the commission such as to make it proper to grant the writ of review on their application—to which point they here cite *Earle v. Juzan*, 7 Ala. 474—still the court cannot consider whether on the evidence or the facts the authority conferred by the statute upon the Public Service Commission has been properly exercised with reference to the public interests involved for the very good reason that it has not before it the evidence or the facts upon which the commission proceeded. In these circumstances the court is limited in its inquiry to the consideration whether the commission had jurisdiction of the proceedings, and, incidentally, the regularity of the proceeding upon which the jurisdiction of the commission is depended.— *Fore v. Fore*, 44 Ala. 478; *Kirby v. Commissioners' Court*, 186 Ala. 611, 65 South. 163. From this, there being no question as to procedural regularity, it results at once that the finding and determination of the commission that the disposition of the properties and franchises of the Ensley Company according to the proposed plan is consistent with the interest of the public, if within the jurisdiction of the commission, must be accepted as an indisputable fact.

(2) We find in the brief of counsel for the city of Birmingham no very definite or apparently confident assertion that the act of August 6, 1915, in so far as it conferred upon the Public

Service Commission the jurisdiction it. undertook to exercise in this case, was wholly without the power of the Legislature. It is suggested, however, that the act delegates legislative power to the commission. Commission with like powers are no novelty. We follow a well-beaten path when we hold that the Legislature had not by this act delegated any part of that constitutional and prerogative power which is peculiarly its own; it has not delegated any power strictly and exclusively legislative. It has committed discretion and judgment to the commission; but such delegations of administrative function and authority which the Legislature might itself exercise are common and necessary to our scheme of government.—*McNeill v. Sparkman*, 184 Ala. 96, 63 South. 977. The distinction between the delegable and nondelegable powers of the Legislature is thus well stated by the Supreme Court of Pennsylvania in *Locke's Appeal*, 72 Pa. 498, 13 Am. Rep. 716: "The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

The case of the statute here is accurately described by the last clause of the quotation above.—*Railroad Commission v. Ala. North. Ry. Co.*, 182 Ala. 357, 62 South. 749; *West Jersey, etc., Railroad Co. v. Board of Public Utility Commissioners*, 87 N. J. Law, 170, 94 Atl. 57.

Referring to section 220 of the Constitution which provides that "no person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town, or village," it is insisted that to construe the act as authorizing the commission to exercise jurisdiction over the transaction in question would involve an application of the act to facts and conditions beyond the lawful reach of legislative power.

(3) Section 4 of the act provides, in substantially the foregoing language of the Constitution, as follows: "Nothing herein contained shall be construed to authorize or permit any person, firm, association or corporation to use the streets, alleys, avenues or public places of any city, town or village, for the construction or operation of any public utility or private enterprise, with-

out the consent of the proper authorities of such city, town or village."

But in the absence of such declaration in the statute the constitutional inhibition would of course be read into it and its provisions given operation and effect, as far as might be, in accord with the Constitution. The legal content of the situation presented by our constitutional and statutory provisions touching the subject in hand is well shown by the language of the court in the analogous case of *Manufacturerse' Light & Heat Co. v. Ott* (D. C.) 215 Fed. 940, where, to an objection that the statute there under consideration attempted to authorize the Public Service Commission of West Virginia to take property without due process of law, the court responded: "As the statute is silent on the subject, the presumption is that the Legislature intended the commission to comply with the Constitution, not to violate it. Such commissions are under two laws, namely, the statute law of the state, which confers upon them certain powers over public service corporations, and the constitutional law of the state and of the United States, which requires that they shall exercise the powers conferred by statute only by due process of law, that is, after giving the companies due notice and opportunity to be heard. A statute is invalid which requires something to be done which is forbidden by the Constitution, but it cannot be essential to the validity of a statute that it should enjoin obedience to the Constitution."

(4) The record shows, as we have said, that the city of Birmingham appeared before the Public Service Commission and objected to the plan proposed by the joint petitioners, the practical effect of which, it must be conceded, will be to permit the sale and conveyance of the properties and franchises heretofore owned and exercised by the Ensley Company to the Birmingham Company. But that objection has neither enlarged nor diminished the power or duty of the commission to pass upon the question whether such sale and conveyance will be consistent with the interests of the public. That question, we apprehend, after the city had intervened, remained to be determined upon just the same considerations as would have been the case had the city not intervened, the city having appeared, not as a party to a judicial proceeding inter partes, but to protect, adduce evidence, or make suggestions in respect of the public interest, as any other constituent part of the public might have done.

The commission, when proceeding under the act of August 6, 1915, exercises judicial, or rather quasi judicial, power; but the proceeding differs radically from those customary proceedings in court by which rights are enforced or wrongs redressed. It is, in substance, a proceeding for a statutory license to do that which the law otherwise does not permit. The statute makes no provision for parties adverse to the petition. The issue raised is of a general, public nature, the interests of the public being represented by the commission. The necessity for an ascertainment of the fact upon which the license depends does not convert the finding into an act strictly judicial. Such is not the judgment, or discretion, which is an essential element of judicial action.—*Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65. The provision of the act to the effect that the question whether that proposed sale and conveyance is consistent with the interests of the public shall be determined by the governing body of the municipality, as well as by the Public Service Commission, in cases where the property of the public utility lies within and the franchises and public duties thereof relate to a single municipality, works no change in the nature or scope of the inquiry to be made by the commission. It effects nothing more than a saving in favor of the municipality, reserving to it the right in a proper case to pass upon the question for itself and without regard to the finding of the commission. From these considerations it results that the Public Service Commission did not furnish a forum for the litigation of any question as to the right or effect of the city's dissent from sale and conveyance on any grounds deemed peculiar to itself, as contradistinguished from the larger general public, as, for example, its contention that the original consent of the proper authorities of the city—which, it may be assumed, the Ensley Company had when it first laid its track in the streets—would not suffice to authorize the use of the streets by the Birmingham Company in the event the commission approved the proposed transfer, or that the stipulation of the ordinance contract, constituting the municipal franchise under which the Ensley Company operated, stood in the way of the proposed transfer. Any controversy as to the existence or effect of these and all like grounds of objection to the proposed transfer or sale, and as well the question whether the municipal authorities have a power to veto in case the Tidewater line does lie partly without the city limits—these are questions, we judge, which

must of necessity be tried out in the customary courts of the country, since there is in the statute no authority for their adjudication by the Public Service Commission. Nor is there anything in the Constitution or laws of this state which requires that the consent of the municipal authorities in any particular instance shall be a condition precedent to the action of the Public Service Commission or requires the commission to condition its approval upon the consent of the municipal authorities. The Commission and the municipality, each acting in its own sphere, independently, and without reference to the action of the other, give or withhold their approval and consent as they may judge the interests represented by them respectively require. We do not, of course, mean to say that the commission will not consult the interests of the municipality in a case requiring municipal consent, but only that in such case it will act independently upon its own judgment as to the interests of the larger public in which the people of the municipality are included.

(5) Much is said in the briefs by way of discussing the question whether the commission's assent to the proposed sale and conveyance would involve an exercise of the authority of the act of August 6, 1915, in violation of the policy of the state as shown by the constitutional inhibition against any law making an exclusive grant of a special privilege (section 22 of the Constitution) and by section 103 of the Constitution which requires that: "The Legislature shall provide by law for the regulation, prohibition, or reasonable restraint of common carriers, partnerships, associations, trusts, monopolies, and combinations of capital, so as to prevent them or any of them from making scarce articles of necessity, trade, or commerce, or from increasing unreasonably the cost thereof to the consumer, or preventing reasonable competition in any calling, trade, or business."

In the same connection the city refers to section 3481 of the Code which was in effect when the Ensley Company got its franchise from the city and which permitted the consolidation of railroad corporations in case only their lines admitted the passage of burden or passenger cars continuously and without break or interruption directly or by means of intervening lines.

In view of what has been already said, no extended discussion of the questions thus proposed is deemed necessary. It is proper to say, however, that it does not appear that there has been any effort to create or approve any exclusive privilege.

[Ex Parte City of Birmingham.]

Every grant of a franchise or right to the use of the streets or highways for the transportation of persons, commodities, or intelligence is special and in a sense exclusive, for the instrumentalities necessary in carrying on the business must occupy space which cannot at the same time be occupied by the like instrumentalities of other persons, natural or artificial, who would engage in the same business. But, so far as the public is concerned, every such grant is justified on the theory that the surrender to some extent of the previous right to the common use of the public property in its entirety is more than compensated by the substitution of other more valuable facilities, while, so far as concerns other persons or corporations who would serve the public by exercising similar franchises, such grant of rights is not exclusive so long as the power to grant other similar franchises is reserved, and the Constitution operates as a reservation in every case.

(6, 7) Further, it may be said that the plan proposed to, and approved by, the Public Service Commission does not create a monopoly in the strict sense of the word, for a monopoly is an exclusive right granted to one person, or a class of persons, of something which was before of common right.—*Birmingham Railway Case,* 79 Ala. 465, 58 Am. Rep. 615. There is no common right to operate railroads along the public streets of a city, town, or village. It may be conceded that the plan in question tends toward the creation of a monopoly in the common, and possibly the constitutional, acceptance of the term, in that it will operate to destroy competition to some extent; but it does not seem likely that section 103 of the Constitution, after specifying common carriers as things to be regulated, or reasonably restrained—it cannot be supposed that the framers of the Constitution intended to authorize the prohibition of common carriers—intends to repeat the idea by the use of the term "monopoly;" at any rate, while action is enjoined upon the Legislature, even in respect of monopolies it is left to choose between regulation, prohibition, or reasonable restraint, and it cannot be said that the act of August 6, 1915, is out of harmony with the requirement that the Legislature shall provide by law for the regulation or reasonable restraint of common carriers so as to prevent them from preventing reasonable competition. Rather, we think, the Legislature, in passing the act, was discharging the duty prescribed by the Constitution. We take it that the reasonableness

[Ex Parte City of Birmingham.]

of the competition which the Constitution intends to conserve depends on its effect upon the public interests, whether or not it makes reasonable the cost of the commodity furnished to the consumer. Competition in some circumstances may amount to needless economic waste in the duplication of investments and the cost of operation for which in the end the consuming public must pay. Hence a general drift of public opinion and legislative practice, consonant with the language and purpose of section 103, towards the supplanting of competition by the regulation of rates. This broad general policy of the state on this subject finds its latest expression in the act of August 6, 1915, and the policy so expressed is to commit the question of consolidations, such as the one here proposed, to the judgment and discretion of the Public Service Commission. Section 3481 of the Code, assuming for the moment that the consolidation in question falls within the influence of its provision, has probably survived the act in question as still evidencing the will of the state that in the absence of the approval of the commission there shall be no consolidation of lines of railway which do not admit the passage of cars continuously and without break or interruption; but to this extent the effect of the section has been limited and cut down by the act, and so the policy of the state has found a new, to some extent, a different, and yet a competent expression. And so of the criminal statutes against monopolies, combines, etc. "We know of no ground upon which a constitutional legislative enactment can be rightly spoken of as contrary to public policy. What is and what is not public policy must obviously be determined by the written and the unwriten law, giving precedence to the former where the two are in conflict. * * * Laws are never said to be contrary to public policy in any other sense than contrary to constitutional policy. * * * When we leave constitutional limitations out of view, the will of the legislative branch of the government, when expressed, is the highest evidence of public policy. To judicially condemn its expressed will, when exercised within constitutional limitations, would be the plainest kind of usurpation."—*Julien v. Model Building, Loan & Investment Association*, 116 Wis. 79, 92 N. W. 561, 61 L. R. A. 668; 6 R. C. L. p. 109, § 108. And if it were conceded that the act was unwise, unnecessary, or inexpedient, these are matters with which the courts are not concerned. They are for the Legislature.—6 R. C .L. p. 107, § 107.

(8) Briefs and arguments on either side seem to proceed upon the theory that the court will in this proceeding render a judgment settling the right of the city in the premises. The city has protested against approval by the Public Service Commission, but we are not given to know that the Birmingham City Commission has taken any formal official action in the way of determining whether the proposed sale and conveyance is consistent with the interests of that part of the public for which it has authority to speak in respect to its peculiar interest; but even if we knew that it had determined that question in the negative, still, considering the limited jurisdiction of the Public Service Commission and the narrow scope of the proceeding in the court, we are unable to see how the expected judgment can be rendered consistently with settled legal principle. It is clear upon this record that this court has neither original nor appellate jurisdiction in this cause to pass upon the effect of the city's possible determination, now or hereafter, against the proposed consolidation, and we must decline the expression of an authoritative opinion upon facts not shown save by the averments of the city's protest. Assuming, doubtfully, that the city had the right to bring the cause here in its present shape, but, on that assumption, going as far as possible in deciding the question argued, we hold, in brief, that upon the record before us the Public Service Commission had and regularly exercised jurisdiction in the premises to determine that the proposed sale and conveyance was consistent with the interests of the public. As we construe the record, this it has decided and nothing more. The effect any determination by the municipal authorities may have, and, by the same token, the right of the parties to the proposed consolidation to proceed as in a case in which the municipal authorities have no interests of lawful recognizance, are questions that remain to be determined in the customary way of determining judicial controversies.

It follows that the order of the Public Service Commission must be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur. GARDNER, J., concurring in the conclusion.