7 So.2d 303

**Ex parte ALABAMA TEXTILE PRODUCTS CORPORATION.**

**4 Div. 241.**

Supreme Court of Alabama.

March 12, 1942.

Rehearing Denied April 16, 1942.

W. H. Albritton, Powell, Albritton & Albritton, and Frank J. Mizell, Jr., all of Andalusia, for petitioner.

Thos. S. Lawson, Atty. Gen., Wm. H. Loeb, Asst. Atty. Gen., and Frank R. Broadway, Gen. Counsel, Dept. of Industrial Relations, and J. Eugene Foster, both of Montgomery, Counsel Unemployment Compensation Agency, opposed.

FOSTER, Justice.

This is a proceeding in this Court to review an order made by the Board of Appeals, Division of Unemployment Compensation Commission, Department of Industrial Relations of the State of Alabama. See Title 26, Code of 1940. The petition is for certiorari.

Without an issuance of the writ, the Attorney General of the State and counsel for the Department of Industrial Relations for the Division of Unemployment Compensation of that Department have appeared and filed in this Court an answer to the petition, and in it admit the allegations of fact contained, but deny the conclusions of law therein set out, and attach to their answer a certified copy of the proceedings, decisions and actions of the Board of Appeals in this matter, including the evidence taken in the cause and all supporting papers and documents.

The cause was submitted in this Court on oral arguments of counsel for the petitioner and for the respondents, and on elaborate briefs directed to the merits of the ruling by the Board of Appeals, and in no respect do the respondents question the jurisdiction of this Court to review as by certiorari the order of the Board of Appeals without the issuance of the writ. A review here will not require the issuance of a writ. Such attitude of the respondents is a waiver of its issuance, and a submission to the jurisdiction and power of this Court to the extent that an agreement may expressly do so, and with as much effect.

But this Court can only act within the jurisdiction conferred by law, and this cannot be enlarged by waiver or the consent of the parties. Such jurisdiction is thus expressed in section 140, Constitution: "Except in cases otherwise directed in this constitution, the supreme court shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions and regulations, not repugnant to this Constitution, as may from time to time be prescribed by law, except where jurisdiction over appeals is vested in some inferior court, and made final therein; provided, that the supreme court shall have power to issue writs of injunction, habeas corpus, quo warranto, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions."

And as far as here pertinent in the Code of 1940, Title 13, section 17(3), "To issue writs of injunction, habeas corpus, and such other remedial and original writs as are necessary to give to it a general superintendence and control of inferior jurisdiction."

But this Court has consistently held that there is no *"necessity,"* under the Constitution and law to issue such a writ to give general superintendence and control of inferior jurisdictions "if there is any court,

inferior to this, which possesses the authority to afford to the petitioner relief as ample as this court could grant," but in such circumstances the petition should be made to the inferior court, with the power in this Court to review its judgments in the manner provided by law. Ex parte Russell, 29 Ala. 717; Ex parte Town of Roanoke, 117 Ala. 547, 23 So. 524; Ex parte Pearson, 76 Ala. 521; Ramagnano v. Crook, 88 Ala. 450, 7 So. 247; Christopher v. Stewart, 133 Ala. 348, 32 So. 11; Ex parte Giles, 133 Ala. 211, 32 So. 167; Ex parte Davis, 170 Ala. 114, 54 So. 164; Code of 1940, Title 7, §§ 1072–1080, section 765, Title 13, section 182.

■■ The law not only confers on this Court the right to issue writs necessary to exercise general superintendence over inferior jurisdiction, but also confers on circuit courts the authority to exercise general superintendence over all inferior jurisdictions,—Title 13, section 126,—and circuit judges may issue writs of certiorari,—Section 182.

■ We doubt not that this Court in its authority of general superintendence to review by certiorari is governed by the same restrictions as is a circuit court. Compare Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632; Ex parte Louisville & N. R. R. Co., 176 Ala. 631, 58 So. 315; Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803; 4 Alabama Dig. p. 437, and Pocket Supp. p. 23, Certiorari, ☞57.

But it is said that a board of state-wide jurisdiction, not limited to any county or district in its field of operation, is not an inferior jurisdiction to the circuit court with a field of operation limited to a circuit. Could an application for certiorari be granted to such a state board by the circuit court of any county in the State? An appeal is allowed to the circuit court of the residence of the claimant. Title 26, section 221, Code of 1940. But this claimant is a nonresident of Alabama.

In Alabama Power Company v. City of Fort Payne, supra, we reversed the Circuit Court of Montgomery County for not issuing a writ to review a state board, but this question was not raised nor considered. And in Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51, this Court considered and reviewed by certiorari the records and proceedings of the Alabama Public Service Commission without any question of its authority to do so. It is said in Dunbar v. Frazer, 78 Ala. 529, that if the legislature

confers appellate and supervisory power on the circuit court, it is reasonable to infer that the intention is that the exercise of such authority shall be confined within the limits which restrict the exercise of its original jurisdiction.

But we have sustained the power of a circuit court to review by certiorari the ruling of a state board or commission (Alabama Power Co. v. City of Fort Payne, supra), and have recognized the right of such court to issue mandamus to it in a proper case (Ex parte Lewis, 236 Ala. 82, 181 So. 306; Lewis v. Gerald, 236 Ala. 91, 181 So. 306), when the circuit court doing so had original jurisdiction in the county where such board or commission had its principal place of business, though we did not emphasize that as the reason for doing so. We do not doubt that the Circuit Court of Montgomery County would have power to give such review to the order here in question, but we do doubt such authority of the circuit court of a county in which it did not sit, to hear the matter in controversy. But whether that circumstance withdraws jurisdiction from this Court to give such review, depends upon whether there is a "necessity" for this Court to act although the Circuit Court of Montgomery County may have such jurisdiction.

The necessity is not wholly dependent upon whether some court inferior to this has the legal power by certiorari to review the order in question. See Ex parte Boynton, 44 Ala. 261. But the rule observed elsewhere with a similar provision of the constitution seems to be that the higher court will not take jurisdiction where the application can be made to a lower court, unless for special reasons complete justice cannot otherwise be done, as where the case is of more than ordinary magnitude and importance to prevent a denial of justice or where no application can be made to the lower court in time to prevent the consummation of the alleged wrong. 14 Corpus Juris Secundum, Certiorari, p. 204, § 57. That authority cites Halliday v. Jacksonville, etc., Plank Road Co., 6 Fla. 304. The report of that case quotes the constitution of Florida in identical language as our section 140, supra, as here material, and observes: "It is not doubted, but that under the latitude given by the said proviso, a writ of certiorari will lie from this Court to any of the inferior jurisdictions, whenever an appropriate case may be presented, or it shall become necessary for the attainment of justice."

We do not think that the requirement of the Constitution that we shall issue such writs only when necessary to give us a general superintendence fixes an iron-clad rule that we cannot do so when another court inferior in grade to us has a like power.

While we hold that the Circuit Court of Montgomery County may review by appropriate remedial writs the boards and commissions of the State sitting in Montgomery, we also think that this Court may do so when in our judgment it is necessary to afford full relief and do complete justice. An exercise of such discretion will receive more favorable consideration when the interested parties appear and virtually agree that there is such necessity by submitting the cause without making the objection that there is an absence of it. We have the right to determine whether a necessity exists, influenced by the magnitude and importance of the question involved, and the convenience of the parties in presenting it, rather than in first going to the Circuit Court of the county where the board sits.

On account of the importance of the question here involved, its state-wide application, the need of an early decision, the territorially restricted jurisdiction of the circuit court and the consent of the parties, we have concluded in the exercise of our power and discretion to give consideration to the merits of the question and make decision of it.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur in the foregoing feature of this opinion.

BOULDIN and BROWN, JJ., dissent, citing specially the case of Ex parte Pearson, 76 Ala. 521, as expressive of the reasons for such dissent.

### On the Merits.

The purpose of this certiorari is by that writ to exercise the constitutional duty of this Court to superintend and control inferior jurisdictions. The particular jurisdiction sought thus to be brought under the control of this suit is the Board of Appeals for the Department of Industrial Relations of Alabama. See Code of 1940, Title 26, section 219. This board in turn acted upon the finding and decision of the Appeals Tribunal of the Division of Employment Security of the State Industrial Relations, supra. See sections 217 and 218, Code of 1940, Title 26. It had under review the initial determination of the deputy (claims examiner) of the Division of Unemployment Compensation. See section 216, Title 26, Code of 1940. The most recent employer was this petitioner, and he appeared as a party in interest as there authorized.

On such hearing before the Appeals Tribunal, this petitioner appeared as it had a right and there also appeared counsel for the Department of Industrial Relations. The claimant was notified by the director of the Division of Unemployment Compensation, but did not appear in person. She has also had notice of the hearing in this Court. On that hearing there was an agreed statement of facts, the important features of which we copy as follows:

"July 26, 1939, was the date claimant entered the employment of the Alabama Textile Products Corporation, and she was separated August 8, 1941. Claimant gave as her reason for separation, 'quit voluntarily, leaving city.' The employer gave as reason for separation 'quit voluntarily, leaving city, job available anytime.' * * *

"At the time of her separation job was available for claimant with appellant, Alabama Textile Products Corporation, and she was given copy of separation notice, whereon appeared the statement 'job available.' * * *

"This offer of employment by the Alabama Textile Products Corporation was transmitted to the New York State Employment Service Office, Niagara Falls, New York, and communicated by it to claimant, Mrs. Mattie L. Matthews Campbell, who refused to accept the offer and gave as her reason for refusal that she was living with her husband, and it was impossible for her to return to Alabama. Work was available for claimant at the plant of appellant at the time she left the city, as stated in separation notice.

"At the time of separation claimant was not employed by appellant for the purpose of performing any duties or occupations which would require or did require her to go outside the State of Alabama and that all of her work for appellant was performed within the State of Alabama."

The Appeals Tribunal in sustaining the deputy examiner made conclusions, some of which are as follows:

"If the offer of available work was definitely made to the claimant and refused by the claimant, it is the opinion of the Ap-

peals Tribunal that it was refused with good cause because the claimant, for domestic, economic, and other reasons, had planned and arranged to remove from the city in which she had been employed to another city in another state. This planned removal was her freeborn American right which she could and did exercise freely without coercion or estoppel.

"The employer's appeal is further based upon its contention that claimant should not be allowed unemployment compensation benefits for the reason that a definite offer of suitable work had been communicated to the claimant with instructions that she report for work, and had been definitely refused by her for the reason that she could not return to her place of former employment because of domestic and other reasons. It is agreed that the offered work was an offer of suitable work, because it was work which the claimant was able to do, in which she had large experience, and which she had evidently performed to the satisfaction of her former employer as was evinced by the employer's strenuous efforts to regain claimant's services. It is also agreed that claimant definitely refused the offer of suitable work. The Alabama Unemployment Compensation Law is very explicit in its provision of disqualification for benefits of any worker who refused suitable work *without good cause*. Were the law applicable in this particular case, claimant would merit disqualification for the week in which such refusal occurred and for the three next following weeks. The Appeals Tribunal does not and will not invoke that penalty in the case of this claimant. The question now arising is: Did claimant refuse the offered suitable work WITH GOOD CAUSE? The answer can only be that for claimant to have accepted such offer would have meant that the claimant must either commute several hundred miles to and from the plant in which such work was offered, or she must break up her home and leave her newly established residence in order to accept it. No law, under high heaven, except, perhaps, an Hitlerian edict, would attempt to impose such requirements and such restrictions upon any worker. The Alabama Unemployment Compensation Law most certainly was not intended to be construed as or converted into such an instrument of coercion.

"The only questions now to be considered are: Is the claimant able to work? The employer-appellant admits claimant's ability to do her work by her persistent efforts to procure her return to employment within his plant in which she was formerly employed. Is the claimant available for work? Claimant is registering for work in the employment office located in the city where she now has her residence. Claimant in applying for benefits, certified and certifies that she is available for work. This Appeals Tribunal rules, therefore, that this claimant having left her work with her former employer to move and set up her residence in another state has established her availability for work by registering for work in that state and by certifying to her readiness, willingness, and ability to accept any accessible suitable employment offered to her. The Alabama Unemployment Compensation Law does not require that a claimant, in order to be eligible for unemployment compensation benefits, must be available for work only in Alabama or in any other definite place or locality."

The Board of Appeals affirmed the decision of the Appeals Tribunal without comment.

■ We have firmly adhered to the principle that on certiorari to an inferior jurisdiction this Court will only consider questions of law. But if such tribunal misapplied the law to the facts as found by it, or if there was no evidence to support the finding, a question of law is presented which should be thus reviewed. Cranford v. National Surety Corporation, 231 Ala. 636, 166 So. 721; Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632, and cases to which we have heretofore in this opinion referred.

The facts and conclusions of fact are not here controverted, but are agreed upon. There is no question of whether there was evidence to support the findings. There is left but one inquiry for us, whether the Board of Appeals and Appeals Tribunal misapplied the law to the facts. This petitioner is directly and peculiarly interested in this question, since under the merit rating feature of the present Act, the amount of the exactions from it and from its employees to the fund created to pay such claims is directly and immediately affected. Section 204, Title 26, Code of 1940.

■ There are two elements in the question. The unemployed individual, in order to receive benefits under the law, must be (1) eligible to receive them with respect to the work in which they are sought (section 213, Code of 1940, Title 26), and (2) must

not be disqualified for them (section 214, supra).

It does not seem to be necessary to discuss any aspect of the eligibility of this claimant, since we have come to the conclusion that she is disqualified under the terms of section 214, supra. We also find that it is unnecessary to determine whether the Act could be applied to the situation so as to permit her to receive benefits consistently with our Constitution and the Federal Constitution. We have heretofore with great pains elaborated upon the constitutional aspect of the Act (not then applying the merit rating feature). Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516. Likewise has the Supreme Court of the United States. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327. Further elaboration is not here important.

We come now to the question of whether the facts agreed upon and found by the Appeals Tribunal show as a matter of law that this claimant was disqualified for benefits under section 214, Code of 1940, Title 26. We have no direct concern with subsection A of section 214, supra, that deals with labor disputes. But in discussing it, we acted upon the idea that the purpose of the Act was to insure a diligent worker against the vicissitudes of enforced unemployment not voluntarily created by the worker. Department of Industrial Relations v. Drummond, Ala.App., 1 So.2d 395, certiorari denied, 241 Ala. 142, 1 So.2d 402; Department of Industrial Relations v. Pesnell, 29 Ala.App. 528, 199 So. 720.

To the extent that the unemployment was voluntary on the part of the worker as affecting his disqualification, the Act itself gives much detail.

It is not our purpose to seek to extend the disqualification for benefits caused by voluntary unemployment beyond the evident meaning of section 214, Code of 1940, supra, as applied to the facts of this case. Going back to some of the subsections of 214, supra, we find that by B claimant is disqualified from benefits for the week in which she has left her work voluntarily without good cause *connected with such work,* and for the three next following weeks, called the waiting period. It is apparent from B that such voluntary act in leaving her work disqualifies her for at least three weeks, unless it was due to some good cause connected with the work. After that time, the fact that she voluntarily left her work with or without good cause, and whether such cause was connected with it or not does not alone disqualify her for future benefits with which we are here concerned. But whether so disqualified or not depends upon the events which follow in the light of other features of section 214, supra. So that for the three weeks she is disqualified if her work is suitable and available, if she leaves it though for good cause not connected with it, as for the necessities of her health. But if she leaves the work with or without good cause connected with it, after the waiting period, she is also disqualified under E for the week in which she "fails, without good cause * * * to accept suitable work when offered [her], * * * and for the three next following weeks." And it (E) is provided: "(1) In determining whether or not any work is suitable for an individual, the director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness, and prior training, his experience and prior earnings, his length of unemployment and prospects for securing longer work in his customary occupation, and the distance of the available work from his residence."

This gives the director (and the Appeals Tribunal, Board of Appeals) much latitude in determining whether offered work is suitable to her, so that its rejection disqualifies her under section 214, supra. If they find that she is physically not able to perform its duties, or that it is not morally fit for her, or that she has not the skill to do the work, or that it is not reasonably safe for her, and that finding is based upon competent evidence to that end, and not arbitrary or unreasonable, there would be nothing to review on certiorari in that respect. But on an appeal to the circuit court under section 221, Code of 1940, Title 26, the "trial shall be de novo."

We also observe that E(1), supra, provides that in determining whether the offered work is suitable for her, the board shall consider "the distance of the available work from [her] residence." The facts here agreed upon are in effect that the work in which she had been engaged with petitioner in Andalusia continued to be available to the time of the hearing and was in all respects suitable except for its distance from her then residence.

The Act is specific that the work is not suitable if the board finds that it

unduly risks "[her] health, safety, and morals, [and her] physical fitness." So that if her employment is so affected, she would not be chargeable with voluntary unemployment if she quits it. But if her previous work is available and suitable and she without one of those causes, enumerated above, voluntarily puts distance between her and it, she cannot complain that such distance has rendered that job unsuitable.

■■ This does not mean that she cannot give up her job and move to a distant city, and thereby be qualified for benefits after the waiting period, though her job had been suitable, and she left it without statutory cause, if that job did not continue to be available, though some other one suitable for her, had she not changed her residence might thereafter become available, but which was not then suitable on account of its distance from her present residence. She is not chargeable with having voluntarily made that work unsuitable when she moved, for it was not then available and could not have been in contemplation. She can voluntarily select her place of residence and change it at will, within or without the State, and would not be required to accept work at a former residence which was not suitable on account of its distance from her present residence, provided she did not leave that job and voluntarily put the distance between her and it, without some cause which is considered good under the Act. To be disqualified by going off, it is not necessary that she had the definite purpose to make her work thereby unsuitable, yet if she was engaged in the work and it continued to be available and while so she without such cause went away so that she could not do it, she is chargeable as though that had been her specific purpose in going away. But that would not apply to a job not then open to her at her previous location, or of which she had no knowledge.

So that the inquiry reverts to one of law, whether the fact that she left Andalusia, where she had a satisfactory job, and which continuously remained open to her, of which she had knowledge, in order to join her husband who lived in New York, was a voluntary act on her part and without good cause, contemplated by the Act, so that the distance from New York to Andalusia, which prevented her from doing the work without returning to Andalusia, was voluntarily created as applied to that very job.

We are not aided in determining this question by collateral facts. That is, whether her husband had a good job in New York and was well able to care for her. Nor whether she had children in her family that needed the benefit of a united family. Nor whether her husband had requested her to give up her job and come to live with him. The facts in no respect show that in doing so it was not her own free, voluntary act. The only cause assigned is that she went to live with her husband, a very commendable impulse.

The relative rights of the husband and wife are well expressed in our case of Cragford Bank v. Cummings, 216 Ala. 377, 113 So. 243, 244, as follows:

"Contrary to the common law, the earnings of the wife are her separate property; but she is not entitled to compensation for services rendered to or for the husband, or to or for the family. Code, § 8262 [Code 1940, Tit. 34, § 66].

"The common wifely duties that inhere in the family relation are not abrogated by this statute. The husband, as head of the family, is charged with its support and maintenance, in return for which he is entitled to the wife's services in all those domestic affairs which pertain to the comfort, care, and well-being of the family. Her labors are her contribution to the family support and care. Whether rendered in or out of the house, no implied obligation to pay arises, Strouse v. Leipf, 101 Ala. 433, 14 So. 667, 23 L.R.A. 622, 46 Am.St.Rep. 122.

"On the other hand, the statute clearly recognizes earnings of the wife as her property. *With the husband's consent*, she may engage *in business in her own name,* may take employment and earn wages, may go into partnership with her husband in business. In all such cases her earnings, the product of her labors, whether in money or property, are hers to use as she will, so far as concerns the husband's creditors. Birmingham So. Ry. Co. v. Lintner, 141 Ala. 420, 38 So. 363, 109 Am.St.Rep. 40, 3 Ann.Cas. 461; Reeves v. McNeill, 127 Ala. 175, 28 So. 623; Compton v. Smith, 120 Ala. 233, 25 So. 300; Marcrum v. Smith, 206 Ala. 466, 91 So. 259, 20 A.L.R. 1303." (Italics supplied.)

■ Consortium, to which the husband is entitled, includes the performance by the

wife of her household and domestic duties, in the sense of whatever is necessary in that respect according to their station in life. 26 Amer.Jur. 637, section 9. We doubt not that this duty persists though the wife should wish to engage in such gainful employment as would prevent her from performing such duties. This Court was speaking with due regard to such status in observing in the opinion from which we have quoted, that it is *with the consent of the husband,* that she may give up those household duties to perform labor which conflicts with them. She is not wholly a free person to determine whether she shall thus be employed. So that if she gives up such employment in order to render her husband the duties which she owes him, and in recognition of his wishes, the voluntary act of her husband is attributable to her and becomes her voluntary act, though she might have preferred to continue in such employment. Assuming that they continued to reside in Andalusia, and she gave up her job in deference to the wishes of her husband, or on his demand as the case might be, certainly the work remaining open to her was not thereby rendered unsuitable. The fact would remain that she failed to accept suitable employment, and though as between her and her husband, there was good cause for doing so, it was not so under the terms of the Act, as between her and her employer, so as to penalize him and his other employees in order to maintain a well-ordered home, not to maintain a status of employment. His will has to a limited extent and in a legal sense become hers in so far as her employment is related to her employer. Her status as an employee was conditioned from its inception upon his consent. When that is withdrawn she no longer belongs to be classified as an employee without employment, and is thereafter a housewife. If he, in their new location, again consents for her to be employed, she again reverts to her status as a conditional employee when she again becomes employed. But the distance to the old job at Andalusia by their joint voluntary act made it unsuitable.

Could it make any difference in a legal sense, whether the husband remained in Andalusia or changed his residence and that of the family to New York? The fact remains that by reason of his legal right, perhaps at his request or demand, it is immaterial, his wife gives up her job,

for no other reason. The distance from the job is not the reason which caused her to give it up, but the distance was created that the husband might thereby secure the consortium of his wife, which conflicts with the job. This is a separation from it which continues due to a distance from it which she voluntarily created, and because it was her duty thus to consent, it was none the less a consent, and it is not listed in the Act as a justification so as not to disqualify her, nor there set out as good cause.

If her husband is well able to care for his wife, as is his duty, she will not by such unemployment aid in the creation of an economic status which our Act was designed to cure, or prevent. If he is unable to do so and is dependent upon her, he should not have made her put her job at such distance as that she could not work on it.

Our conclusion is that the Appeals Tribunal and Board of Appeals did not correctly apply the law to the facts which they found and which were agreed to be true.

It results that the order of both the Appeals Tribunal and the Board of Appeals affirming the conclusion of the deputy examiner are contrary to the law, as is also the conclusion of the deputy examiner. It is therefore ordered that all those orders be and they are hereby quashed and held for naught.

Order of Board of Appeals, Appeals Tribunal and of the deputy examiner are quashed.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.

BOULDIN and BROWN, JJ., dissent, and agree with the reasons assigned by the Appeals Tribunal.

BROWN, Justice (dissenting).

The holding of the majority that the act of the claimant in leaving her employment in Andalusia and moving to New York to join her husband at the newly selected domicile was the voluntary abandonment of her employment without good cause, is clearly inconsistent with the further holding that the husband has the legal right to select the family domicile. It also ignores the moral influence of the

home and family ties, and strikes at one of our most sacred institutions—the home and family life.

For these reasons I am constrained to dissent from the opinion of the majority. I think the ruling of the Appeals Tribunal and the Board of Appeals should be affirmed.