92 So.2d 295 (1957)
Lucille D. SHEFFIELD et al., Plaintiffs-Appellants,
v.
J. Hadley HEARD, Administrator of the Division of Employment Security of the Department of Labor of the State of Louisiana, et al., Defendants-Appellees.
No. 8545.
Court of Appeal of Louisiana, Second Circuit.
January 7, 1957.
Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellants.
Lewis D. Dunbar, Arthur M. Curtis, Baton Rouge, for appellees.
AYRES, Judge.
This is an appeal taken by Mrs. Lucille D. Sheffield and her husband, pursuant to the provisions of LSA-R.S. 23:1634 of the Louisiana Employment Security Law, for a judicial review of a judgment of the District Court and the findings and decision of the Louisiana Board of Review, an agency of the Department of Labor of the State of Louisiana, all of which denied her claim for unemployment compensation benefits.
The defense is that plaintiff is disqualified for the benefits provided by the aforesaid statute in that she left her employment without good cause connected with her employment.
There is no dispute as to the material facts involved. Mrs. Sheffield, prior to her marriage, obtained employment with the Esso Standard Oil Company of Louisiana in Shreveport, Louisiana, on or about May 1, 1947. She was married to her husband, David A. Sheffield, February 8, 1948, after which she continued her employment but from which she was granted a maternity leave of absence from May 15, 1949, until October 1, 1949, after which her employment was again resumed, following which, at her own request, on or about March 1, 1951, she was transferred to her employer's office in Baton Rouge, Louisiana, in order that she might be with her husband, who was then a law student at the Louisiana State University. She was there employed until May 29, 1953, when she resigned her position in order to accompany her husband, after his graduation, to Alexandria, Louisiana, where he was to engage in the practice of his profession. Failing to secure employment in Alexandria, Mrs. Sheffield made application for unemployment compensation, which, after due proceedings and in due course, was rejected. She was held disqualified because it was *296 found that she left her employment without good cause connected with her employment. Such was the ruling of the Board of Review, as well as of the District Court.
In support of her contention, plaintiff relies upon the legal principle firmly established and recognized in the law and jurisprudence of this State that the domicile of the husband is likewise the domicile of the wife, LSA-C.C. art. 39; that the husband and wife owe to each other mutually, fidelity, support and assistance, LSA-C.C. art. 119, and that the wife is bound to live with her husband and to follow him wherever he chooses to reside, LSA-C.C. art. 120. Accordingly, it is contended that claimant's separation from her employment was in obedience to a legal duty and was, accordingly, for "good cause" within the intendment of the statute. So far as the contention is thus made, we are in accord with claimant's position that, in order to maintain the home and family relationship, the severance of her employment was for good cause; but, unfortunately for her, that is not the only requirement prerequisite for recovery of benefits provided by the statute. The severance of employment must have been for a good cause connected with her employment. The statute so provides in this language:
"An individual shall be disqualified for benefits:
"(1) If the administrator finds that he has left his employment without good cause connected with his employment." LSA-R.S. 23:1601. (Emphasis supplied.)
This statute was amended in 1952 by so restricting and limiting the "good cause" to causes "connected with his employment."
The action of the wife in leaving her employment to move with her husband to another city and to thus maintain the home and family relationship is without doubt a very laudable reason from the viewpoint of the home and society in general; but, however commendable, this is not a cause connected with her employment.
The provision of the statute is so clear as not to require an interpretation. In making reference to the general rules for the construction and interpretation of laws, we find LSA-C.C. arts. 13 and 14, which provide:
"Art. 13. When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
"Art. 14. The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
When a law, therefore, is clear and free from all ambiguity, we are not at liberty to disregard its language under the pretext of pursuing its spirit. Hibernia National Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15.
The aforesaid amendment of 1952 evidences clearly a legislative intent that for one to be entitled to unemployment compensation benefits, the severance of his employment must have been for some cause connected with his employment.
The views of this court are in accord with the general rule expressed in 13 A.L.R. 2d 876, as follows:
"`Good cause' provisions which require that such cause be connected with the claimant's last employment have, without exception, been held to preclude one who quit her employment to go to another area to be with her spouse from the benefits of unemployment compensation."
Cited in support of this rule is Ex Parte Alabama Textile Products Corp., 242 Ala. 609, 7 So.2d 303, 141 A.L.R. 87; Huiet v. Schwob Mfg. Co., 196 Ga. 855, 27 S.E.2d *297 743. Such was also the holding of the Supreme Court of Nebraska in the case of Woodmen of the World Life Ins. Soc. v. Olsen, 141 Neb. 776, 4 N.W.2d 923, 924.
As a prelude to the enactment of the provisions of the Louisiana Employment Security Law, the Legislature, in a declaration of public policy, stated:
"Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance." LSA-R.S. 23:1471.
With reference to a similar declaration and the applicability of the statute to an identical situation, it was stated in Woodmen of the World Life Ins. Soc. v. Olsen, supra:
"It was a legislative purpose to ameliorate ills growing out of labor troubles and unemployment. Protection of the public from pauperism and from other burdens created by unemployment was also in the minds of the lawmakers. The legislature considered these subjects and acted directly on them. Provision was made for the creation, conservation and distribution of funds to make the law effective. These funds were not intended for disqualified claimants for benefits. Disqualification as well as eligibility of claimants must be considered in giving effect to the words `without good cause.' The legislative act does not deal directly with domestic relations. Of course it is the duty of a wife to live with her husband while the marital relation exists, if conditions permit, but the unemployment compensation law does not relieve the husband from his duty to support his wife. Her employer did nothing to prompt her decision to leave her work. The cause of her voluntary action had no connection with the abandoned relation of employer and employee. The purposes and import of the unemployment compensation law in its entirety indicate that a compensable claim for benefits must have some connection with, or relation to, the employment which the employee has lost. * * *
"A compensable claim for benefits under the Nebraska unemployment compensation law must have some relation to, or connection with, the employment which employee has lost. The views of the law herein expressed, when applied to the stipulated facts, lead to the conclusion that claimant left her employment `without good cause' within the meaning of that term as used in the statute, and that her claim was properly disallowed by the district court." (Emphasis supplied.)
For these reasons, our conclusion is that plaintiff is disqualified for the benefits claimed for having left her employment without good cause connected with her employment, and that, therefore, the findings and conclusions of the Board of Review, as well as the judgment appealed, are correct, and the judgment should be and it is hereby affirmed at appellant's cost.
Affirmed.