44 So.2d 622

ALABAMA MILLS, Inc. v. CARNLEY et al.

6 Div. 806.

Court of Appeals of Alabama.

Oct. 5, 1949.

Rehearing Denied Nov. 1, 1949.

· Martin, Turner & McWhorter and Alvin W. Vogtle, Jr., Birmingham, for appellant.

48

J. Eugene Foster, Montgomery, for appellee S. Fleetwood Carnley.

Bob Moore, Jr., Winfield, for appellee Smith.

HARWOOD, Judge.

This is an appeal from a judgment of the Circuit Court of Marion County awarding unemployment compensation to Kate Smith on her claim of and for such compensation for a period of twenty weeks from 24 December 1947.

In the circuit court the cause was submitted upon an agreement of counsel and upon the transcribed testimony taken in the same cause between the same parties in hearings before the appeals referee and the board of appeals.

The pertinent portions of the agreement of counsel were:

"2. That the pregnancy of appellee, Kate Smith, was the sole reason for the quitting of her employment with appellant, and that her condition was in no manner caused or induced by her employment with appellant;

"3. That appellee, Kate Smith, was entitled to the unemployment compensation sought if the court should find that: (a) she was available for work, and able to work, during the period for which claim was filed, and (b) she did not voluntarily quit her work without good cause connected with such work;

"4. That if appellee, Kate Smith, was entitled to unemployment compensation, she should recover the sum of $280.00 payable in successive weekly installments of $14.00 per week."

The appellee, Kate Smith, testified before both the appeals referee and the board of appeals that she quit her employment with appellant on 20 March 1947, because of pregnancy.

Her child was born on 13 September 1947, which was a few days less than 6 months after she quit work.

She applied for unemployment compensation on 24 December 1947, which we observe was a few days more than three months after the birth of her child.

She further testified that she told her overseer why she was quitting, but did not tell any of his superiors. She stated she had obtained a sick leave on a previous occasion, but did not know she could obtain a leave of sufficient length to cover an absence for pregnancy.

She claimed she was not familiar with appellant's policy of granting leaves of ab-

sence for a year and a day to employees who became pregnant, and further claimed she had never seen a pamphlet issued by appellant containing personnel policies which included provisions for leaves of absence.

Appellee further testified that she had worked in textile mills "mostly as a battery hand," and had also had some experience as a waitress.

She had approached her overseer in an effort to regain her job just before she filed her claim for unemployment compensation, but was told the mill was laying off hands at the time. She again approached her overseer for a job about two weeks after she filed her claim.

She registered for work with her local unemployment office at the time she filed her claim for unemployment compensation.

In the hearing before the appeals board the appellant presented evidence tending to show that it was appellant's policy to grant leaves of absence to pregnant employees; that none of appellant's employees superior to Kate Smith's overseer were aware that she had quit because of pregnancy; and that appellee had signed an affidavit stating the reason for leaving appellant's employment as: "Quit work voluntarily without good cause connected with her work; work available; quit on doctor's orders."

There was further evidence presented by appellant at the appeals board hearing to the effect that Kate Smith's overseer had no authority to grant leaves of absence, and that the pamphlet containing appellant's policies with respect to leaves of absence was posted on a bulletin board where employees could see it.

In sustaining the determination of the claims examiner and the decision of the appeals referee, both of which granted appellant's claim to unemployment compensation, the board of appeals reached the following conclusion: "Claimant quit her job with her separating employer because she was pregnant and was physically unable to work. Section 213-C of the Alabama Unemployment Compensation Law provides, among other things, that 'a woman shall be presumed not to be able and not available for work if she quits or is required to terminate her employment because of pregnancy.' This statutory provision must take precedence over any company rule regarding provisions for sick leave. It must, therefore, be determined that claimant under said section is not available for work."

And the board decided that the appellee here was entitled to benefits for such weeks as she has met the other eligibility requirements of the law.

One of the main questions presented is whether appellee Kate Smith was qualified and eligible for unemployment compensation in view of Sections 213(C), and 214 (B), Title 26, Code of Alabama 1940 of our unemployment compensation law. These sections read as follows:

"213. Benefit eligibility conditions.—An unemployed individual shall be eligible to receive benefits with respect to any week only if the director finds that—

"C. He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work either at a locality at which he earned wages for insured work during his base period or at a locality where it may reasonably be expected that such work may be available. *A woman shall be presumed not to be able to work and not available for work if she quits or is required to terminate her employment because of pregnancy, provided, in any event, that no woman shall be deemed to be able to work and available for work for any week during the three month period immediately before the expected birth of her child, and for any week during the three month period immediately following the birth of her child, in either of which cases the director may require the production of doctor's certificates to establish such dates."* (Italics ours.)

"214. Disqualification for benefits.— An individual shall be disqualified for benefits for total or partial unemployment:—

"B. If he has left his work voluntarily without good cause connected with such work."

The appellant and also the Department of Industrial Relations take the position that under Section 214(B), supra, that Kate Smith's departure from her job was an act of her own volition, and therefore without good cause connected with her work, and that being thus disqualified for benefits no need arises to consider her eligibility for compensation under the terms of 213(C), supra.

Some support for this position is obtained from the case of Moulton v. Iowa Employment Security Commission et al., 239 Iowa 1161, 34 N.W.2d 211, and the cases cited and discussed therein. In none of these cases however did the unemployment compensation acts being respectively considered contain provisions similar to Section 213(C) of our act. Their precedential value is therefore of little force.

We have also read with care the opinion of our Supreme Court in Henderson v. Department of Industrial Relations, 40 So. 2d 629, 630,[1] wherein our Supreme Court, considering whether illness causing an employee to quit his job, where such illness did not result from the employment, disqualified such employee from benefits, wrote as follows: "Ill health or physical infirmity is, of course, good cause for employees to cease working. But unless the illness or physical infirmity is shown to have resulted from or to have been caused by the employment, the employee is disqualified from receiving benefits when he voluntarily leaves his employment on account of such illness or physical infirmity. *In other words, the cause for quitting may have been a good one, but the cause must have been connected with the work.*" (Emphasis supplied.)

To like effect is the following statement to be found in Ex parte Alabama Textile Products Corporation, 242 Ala. 609, 7 So. 2d 303, 309, 141 A.L.R. 87: "* * * So that * * * *she is disqualified* (from receiving unemployment compensation) if her work is suitable and available, if she leaves it though for good cause not connected with it, *as for the necessities of her health.* * * *" (Emphasis supplied.)

Neither of these two cases was however dealing with the question of the effect of an employee quitting her job because of pregnancy, and in the Henderson case, supra, the court, on rehearing, made it abundantly clear that the opinion was limited to the facts of that particular case.

That portion of Section 213(C) which is italicized above dealing with the eligibility of pregnant employees to receive unemployment compensation was inserted in 1943 by amendment to our unemployment compensation act. Prior to that time subsection C of Section 213 had merely read: "He is able to work and is available for work."

Unless the legislature intended to do a futile act when it amended Section 213(C) to its present form, which we cannot presume, we cannot accept appellant's contention where an employee quits her work because of pregnancy she is thereby disqualified for benefits because her quitting was voluntary and without good cause connected with her work.

In the 1943 amendment the legislature provided, as to eligibility of employees to receive benefits that he, or she, must be physically and mentally able to perform by past experience such work as may be available in the locality. It appears to us that the legislature then, by the 1943 amendment, placed pregnant workers in a separate class, for as to them it provided that "a [pregnant] woman shall be presumed not to be able to work and not available for work" if she quits because of pregnancy, and it made absolute the unavailability for work of a pregnant woman three months prior, and three months subsequent to the birth of her child.

That a valid public policy exists to support a separate classification of employees who are expectant mothers is we think clear from the mere statement of the proposition.

■ We must seek the legislative intent from an act as a whole, and not from only a portion thereof. Marion County v. Middleton, 246 Ala. 464, 21 So.2d 312. While Section 213 deals with the eligibility of an employee to receive benefits, and 214 deals with his qualifications therefor, the two sections are so interrelated that consideration of one necessitates a consideration of the other, and a mechanical application of the one without consideration of the other cannot lead to satisfactory conclusions.

By Section 213(C), supra, the legislature created a rebuttable presumption that a pregnant employee was ineligible to work during any period of her pregnancy, and an absolute presumption of such inability during the six month period existing three months before the birth of her child and the three months following such birth.

Having said that such employees are ineligible for work because of their pregnant condition, and presumed unable to work, certainly it should follow that such physical condition creates a good cause for quitting a job, and a cause that is not to be measured and conditioned by standards applicable to employees who were not the subjects of special treatment in the legislative enactment. The Legislature having said on the one hand that pregnancy renders an employee unable to work, then on the other hand such condition must certainly be considered a good cause for quitting work, and not a disqualifying one.

■ Unless the above view prevails, and if pregnancy should be considered a disqualifying cause under Section 214(C), supra, then a forfeiture of benefit rights based on earnings with an employer whose employ a pregnant woman quits would result under the provisions of our act. This is a substantial penalty, and provisions imposing such penalties should be strictly construed in favor of persons sought to be subjected to their operations. Anderson v. City of Birmingham, 205 Ala. 604, 88 So. 900; Tennessee Coal, Iron & R. Co. v. Martin, 251 Ala. 153, 36 So.2d 547.

■ Though presumptively ineligible for benefits during her entire pregnancy, and absolutely ineligible for three months before and three months after the birth of her child, it is our conclusion that such period of ineligibility is temporary and limited by the terms of Section 213(C) and that after the expiration of such period the worker may become eligible by meeting the requirements of the statute, and if qualified.

■ Since in our opinion pregnancy must be deemed a good cause for quitting work, though not within the usual reach of Section 214(B), a conclusion we think necessary if any meaning is to be attached to the provisions of Section 213(C), it becomes necessary to determine whether Kate Smith, not being disqualified because of her quitting her job because of pregnancy, is otherwise eligible for compensation.

The only matter to be considered in this connection is whether Kate Smith should be considered available for work in view of her efforts after the bar of her ineligibility resulting from her pregnancy was lifted by the expiration of time. The claims examiner, the appeals referee, the appeals board, and the circuit court of Marion County have all concluded this question in her favor.

The evidence tends to show that shortly after the expiration of the three month period following the birth of her child Kate Smith applied to her former overseer in appellant's mill for her job. She was informed that the mill was laying off hands. She then registered with the local unemployment office. About two weeks later she again approached her former overseer in appellant's mill for a job, and was again unsuccessful. She sought no other employment between the date she registered for work and the date of the hearing before the appeal board on 18 May 1948.

The evidence further tends to show that Kate Smith lives "between Guin and Winfield," the location of her residence being not more definitely shown.

It is a matter of common knowledge that the activities of a mother of an infant child are considerably limited by the necessities of caring for her child. While

Kate Smith did not seek work as a waitress, or in other textile mills, we think that the efforts she did make toward securing work were sufficient to justify the trial court's conclusions that as of the date of filing her claim, and following, that she was available for work. If a job had been offered her it would of course have been necessary for her to make provisions for the care of her infant in order to accept. Until such contingency materialized she could not reasonably be expected to make such arrangements. Thus during her job seeking period she remained fettered with the care of her infant, and the reasonableness of her efforts, or her real desire to work, must be measured in light of such circumstances. We are unwilling to say therefore that the lower court erred in its conclusion in respect to appellee's availability for work in view of the facts developed.

That part of the judgment of the lower court finding that Kate Smith was qualified and eligible for benefits claimed under the unemployment compensation law is affirmed.

■ The lower court however adjudged that Kate Smith, claimant defendant below, have and recover of the Alabama Mills Company, Inc., the appellant, the sum of $280.00, payable in successive weekly installments of $14.00 per week until paid. This part of the judgment is erroneous, in that it is not in accord with the statutory method provided for the payment of benefits.

Section 205 of Title 26, Code of Alabama 1940, sets out that such benefits are payable from the fund resulting from employer contributions, and shall be paid through employment offices or such other agencies at such times and in such manner as the director may prescribe.

That part of the judgment providing that Kate Smith, claimant defendant below, have and recover of the Alabama Mills Company, Inc., the sum of $280.00, payable in successive weekly installments of $14.00 per week until paid, is reversed, and it is hereby ordered that Kate Smith have and recover the sum of $280.00, pay-able in successive weekly installments of $14.00 per week until paid, such amounts to be paid as provided in Section 205, Title 26, Code of Alabama 1940. With such change the judgment below is due to be affirmed, and it is so ordered.

Affirmed.