SOUTHWESTERN BELL TELEPHONE CO.
*v.* THORNBROUGH, COMMR.

5-2214                                    341 S. W. 2d 1

Opinion delivered December 19, 1960.

*J. Gayle Windsor, Jr.* and *Edgar Mayfield,* for appellant.

*Lowell D. Gibbons* and *Luke Arnett,* for appellee.

J. SEABORN HOLT, Associate Justice.   This is an unemployment compensation case.  The appellant, Southwestern Bell Telephone Company, employed Mrs. Ouida

R. Mills during August of 1953 as a telephone operator in West Memphis exchange of the company. In 1956 Mrs. Mills requested a pregnancy leave which was made effective on July 29, 1956 and under standard company policy, its termination date was fixed at July 28, 1957, one year later. At the time Mrs. Mills applied for a pregnancy leave, she expressed her desire to return to work about two months after the anticipated date of birth of her child; however, she was advised in writing on her leave application that there probably would not be a place for her, due to dial conversion.

The evidence in the record disclosed that the terms and conditions of the type of pregnancy leave granted by the appellant are a matter of company policy, and not union contract. Under this policy, pregnancy leaves are always for a period of one year. There is no assurance of re-employment at the end of the leave. However, if the employee, after the birth of her child, is able and willing to work before the expiration of the one-year term of leave, and if a suitable vacancy exists, Southwestern Bell does, on some occasions, reinstate employees before the expiration of the full year's period.

Mrs. Mills' child was born on September 26, 1956. On or about October 31, 1956, Mrs. Mills contacted the chief operator at the West Memphis exchange about the possibility of resuming work, but was informed that no vacancy existed at that time. She contacted the chief operator again within two weeks and was told there would be no work for three or four more months.

On December 5, 1956, Mrs. Mills applied for unemployment benefits at the West Memphis office of the Employment Security Division, stating that she had been on a leave of absence from Southwestern Bell and that she had not been rehired. Upon being notified about the filing of the claim, the company challenged Mrs. Mills' eligibility on the grounds that she was on a pregnancy leave of absence which was not to terminate until July 28, 1957, and taking the position that

she was therefore covered by the provisions of Ark. Stats., § 81-1106 (e) (2) [hereinafter set out].

The local office of the Employment Security Division, at West Memphis, made a determination in favor of the claimant stating:

"While it may be company policy to grant a year's leave of absence in such cases, it is believed that this is a maximum duration rather than a blanket rule for all cases. It does not seem that the claimant should be penalized by being without work, or unemployment benefits for a full year period, merely because the company set duration of her leave at one year. . . . the Arkansas law provides that a female, separated for pregnancy shall not be disqualified, if she re-applies for work at the end of her leave of absence. It is our interpretation that this is to mean that a female who is separated because of pregnancy, after securing a leave of absence, shall not be disqualified if she re-applies for work as soon as she is again physically able to work, and her leave has not already expired. In this case, her leave has not expired, and we believe she meets eligibility requirements."

The decision of the local employment office was appealed by the employer and hearings were held in West Memphis and in Little Rock by a Referee of the Appeals Tribunal. The Referee reached the same conclusion as the local employment office, holding that Mrs. Mills had separated from her employment under "non-disqualifying circumstances," and concluding that her unemployment subsequent to December 5, 1956 was the result of a lack of work in the West Memphis exchange, and that such lack of work was created primarily by the conversion of the exchange to a dial system.

The decision of the Appeals Tribunal was then appealed by Southwestern Bell to the Arkansas Board of Review. No new evidence of any material consequence was taken by the Board although it was brought out that the claimant ultimately was reinstated by

Southwestern Bell in her old job when a vacancy occurred in April of 1957. The Board of Review, after reviewing the record made before the Appeals Tribunal, affirmed the decision of the Appeals Referee and adopted it as its own, both as to findings of fact and conclusions of law. Southwestern Bell then filed for a Petition for Review by the Pulaski Circuit Court, as provided by law. After oral argument from counsel, and briefs, the Circuit Court affirmed the Board of Review and from that judgment comes this appeal. In issue are the unemployment benefits of the claimant from December 5, 1956, when she applied for them, till her reinstatement on April 21, 1957.

For reversal, Southwestern Bell, appellant, relies on the following points: (1) There was no leave of absence within the meaning of the statute and (2) if there were a leave of absence it had not terminated as of December 5, 1956, when Mrs. Mills was declared eligible for unemployment benefits.

As to the first point we have reached the conclusion that there was a leave of absence. Our Employment Security Act contains no definition of "leave of absence" so we are left to the language of the contract between the parties, prior conduct and dealing by the company with employees, and any other relevant facts at hand to determine if a leave of absence existed.

There are several factors which go to show that a leave of absence existed. One is the contract of employment which provides:

"*Leave of Absence.* Insofar as the requirements of the service will permit, leaves of absence for good cause, and of reasonable length, will be granted upon request. The intention of the employee with respect to return to work shall be established in writing between the employee and the company at the time the leave is granted, and a copy shall be furnished the employee at the time the leave is granted."

A second document is exhibited in the record entitled "Southwestern Bell Telephone Company Leave of Absence." This document states that Mrs. Mills was granted a leave of absence because of pregnancy and that the employee, Mrs. Mills, understands that due to dial conversion there probably will not be a place for her at the time this leave of absence expires. A further note on the document states that leaves of absence do not carry any guarantee of employment. However, the record reflects that employees on leave of absence for pregnancy were nearly always hired back and often before the termination of the company set policy of one year. An additional factor is that the testimony shows that valuable seniority benefits of the employee were not lost if she was granted a leave of absence rather than quitting because of pregnancy. Under the peculiar facts of this case we feel compelled to find that there was a leave of absence granted the employee. It is argued by the appellant that a leave of absence connotes a continuity of the employment status, *Bowers* v. *American Bridge Company,* 43 N. J. Super. 48, 127 A. 2d 580 and cases there cited, and since the alleged leave of absence agreement contained no guarantee of re-employment, it was not in fact a leave of absence. We agree that in ordinary cases a leave of absence connotes a continuity of the employment status. We think the facts and surrounding circumstances in the present case indicate that Southwestern Bell and Mrs. Mills planned to continue the employment status at the time of her separation despite a printed provision of the contract that there was no guarantee of re-employment. Otherwise we can conceive of no other reasonable explanation of the acts of the company in writing a provision on leave of absence in the contract of employment, in giving a formal document entitled "Leave of Absence" when it was requested, in preserving the seniority rights of the employee, and in frequently reinstating the employees before the termination of the leave of absence, and in the present case, of reinstating Mrs. Mills three months before her leave of absence was to expire.

As to the second point, we agree with the appellant that the leave of absence had not terminated as of December 5, 1956 when Mrs. Mills was declared eligible for unemployment benefits. Upon this point some legislative history is helpful. The availability of women for work after pregnancy has been particularly troublesome in the administration of Employment Security Acts. As a result, states began to devise and enact special statutory tests applicable to women who leave their jobs due to pregnancy. At least 33 states have such provisions in their unemployment compensation laws. U. S. Dept. of Labor, Comparison of State Unemployment Insurance Laws, January 1, 1958, page 103: There are two general types of tests. (1) The woman is disqualified for an arbitrary number of weeks before and after the birth; or (2) she is presumed to be unavailable and hence ineligible for unemployment benefits after the birth until she has secured new work and has earned either a stipulated amount of wages, or has worked for a specified minimum period of days or weeks. Arkansas has this latter type. See Ark. Stats., § 81-1106 (e)(2) requiring thirty days of new work. In 1955, the Arkansas General Assembly amended § 81-1106 (e)(2) by providing that the thirty days new work test should not apply to an individual who had obtained a leave of absence from her employer for pregnancy and applies for reinstatement with her employer at the termination of such leave but is not reinstated by such employer. Or stated another way, a person who has a leave of absence for pregnancy does not have to secure thirty days of new work if she is not rehired, in order to receive benefits.

With this in mind, we need only look at the terms of the statute to come to a decision on the second point. Ark. Stats., § 81-1106 (e)(2) provides:

"If a female claimant is separated from her customary occupation because of pregnancy: Such disqualification shall continue until she has not less than 30 days of paid work subsequent to date of confinement.

Provided this provision shall not apply to an individual who has obtained a leave of absence from her employer for the above reason and applies for reinstatement with her employer at the termination of such leave but is not reinstated by such employer."

The statute says *termination of such leave.* In the present case, Mrs. Mills secured a leave of absence on July 29, 1956, at which time she was approximately seven months pregnant. The termination date of her leave was set at July 28, 1957, one year later. Mrs. Mills' child was born on September 26, 1956. About October 31, 1956, she applied for reinstatement which was denied and on December 5, 1956, she was declared eligible for unemployment compensation. At the time she was declared eligible, her leave of absence still had over seven months to run. Since her leave of absence had not terminated, it was error for the Commissioner to declare her eligible for benefits. The Commissioner argues that the year's leave of absence is an unreasonable length of time. Under the present circumstances, we do not think so. The present policy of the company of one year leave of absence for pregnancy was set up long before enactment of the Employment Security Act as a practical solution to a recurring employee problem and not as a guise to avoid unemployment payments. We cannot say that a year's time is unreasonable when all the attendant circumstances of giving birth to a child and caring for it the first few months after birth are taken into consideration.

Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

HARRIS, C. J., and ROBINSON, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. The Employment Security Act covers Chapter 11 of the 1960 Replacement, Arkansas Statutes, Annotated, Volume 7-A. The Declaration of State public policy is found in the opening section, 81-1101, and reads as follows:

"Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which may fall with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this great hazard of our economic life. This can be accomplished by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment, the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police power of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Appellee, Ouida R. Mills, was granted leave of absence, due to pregnancy, on July 29, 1956. On October 31, 1956, about five weeks after the birth of her child, Mrs. Mills endeavored to resume work with the company, but was refused employment *because no vacancy existed at that time*. I emphasize the statement, for this was the reason for employment not being granted, rather than the fact that a year's leave had not terminated. This is very clear from the record. Mr. J. W. Harrington, secretary, Employees Benefit Committee, Southwestern Bell Telephone Company, representing the employer, testified:

"The contract does not specify the length of time, and the following is from a part of the company's established practice: 'When it has been decided that an employee shall cease work because of pregnancy, she determines whether to resign or request a leave of absence.

If she requests a pregnancy leave of absence, it is granted for a period of one year.' It is always one year.

That doesn't mean, however, that the employee will not be returned before one year. That depends upon the employee's physical condition, her willingness to return and the availability of work in the office where she was formerly employed.''

This last statement pretty well states my interpretation of the leave granted, for in my view, the year's leave of absence only relates to the period of time in which the employee may preserve her job rights. Here, there is no contention that Mrs. Mills was not physically able to return to work; certainly she was willing to return to work, and employment was only refused because there were no positions open. This is plainly shown by Mr. Harrington's testimony.

''There has been a change in the employment conditions at West Memphis, which came about during her absence. The West Memphis office was converted to dial operation; there are not as many operators needed at present as were needed prior to the conversion. . . .

To the best of my knowledge, we have no quarrel at all with Mrs. Mills. As far as I know, also, she would be re-employed if a vacancy were present.''

In fact, on a previous occasion in 1954, after being granted a year's leave due to pregnancy, Mrs. Mills returned to work for the telephone company after four months.

Mrs. Mills was involuntarily unemployed, and under my view, in conformity with the intent of the Employment Security Act, she was entitled to unemployment compensation when she became able and willing to return to work. The company's answer to this contention is that Mrs. Mills agreed to take the year's leave; however, I fail to see that appellee really had any choice, *i.e.*, she either had to take the leave, or she had to resign. Adopting the latter course would simply mean that she would

lose seniority rights, and other benefits as an employee of the telephone company. If the company had a right to demand that she take a year's leave, or else resign, then I see no reason why it would not have equal right to demand that she take a two years' leave, or any other period of time which it might consider desirable. For that matter, § 81-1118 provides that "any agreement by an individual to waive, release, or commute his rights to benefits, or any other rights under this Act, shall be void." If then, leave granted by reason of physical disability terminates when that person is able and willing to return to work, any agreement to the contrary would be void. In effect, the Majority have held that appellee, in accepting the leave of absence, has waived her rights to any benefits for a whole year, notwithstanding that she was able and willing to return to work before that time.

Because, on the whole, I consider the holding of the Majority to be contrary to the intent of the Legislature in passing the Employment Security Act, I respectfully dissent.

Mr. Justice ROBINSON joins in this dissent.