165 So.2d 128

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY**

v.

**DEPARTMENT OF INDUSTRIAL RELATIONS and Sybil P. McAlister.**

5 Div. 631.

Court of Appeals of Alabama.

May 19, 1964.

John F. Dillon, IV, Wilbanks, Wilbanks & Dillon, Alexander City, and Walter R. Byars, Birmingham, for appellant.

Chas. G. Reynolds, Alexander City, for appellee McAlister, and J. Eugene Foster, Montgomery, for Department of Industrial Relations.

JOHNSON, Judge.

This is an appeal from a judgment of the Circuit Court of Tallapoosa County awarding unemployment compensation to the Appellee, Mrs. Sybil P. McAlister. Mrs. McAlister filed her claim for unemployment compensation benefits with the Alabama Unemployment Compensation Agency on April 29, 1962. The Agency, in disallowing the claim, held that the claimant while being on a requested leave of absence was unavailable for work as per the provisions of Sec. 213, subd. C, Tit. 26, Code of Alabama, 1940, as amended.

The claimant appealed from the determination of the Agency to an Appeals Referee on June 11, 1962. The Appeals Referee affirmed the decision of the Agency and based its decision on the same grounds. From the decision of the Appeals Referee, claimant appealed to the Board of Appeals for the Department of Industrial Relations and on January 18, 1963, the Board of Appeals, in reversing the Agency and the Appeals Referee, stated, "The Board has held in numerous such cases, while awaiting a determination by the Courts, that the claimant in cases such as this have met the availability requirements of the Law and are entitled to benefits."

The Appellant, Southern Bell, perfected its appeal to the Circuit Court of Tallapoosa County, Alabama, and upon trial, without jury, the Circuit Court rendered judgment, based upon an agreed statement of facts, in favor of the Appellee, Sybil P. McAlister, in the amount of $394.00. From this judgment, Southern Bell appealed to this court.

Pertinent portions of the agreed statement of facts as submitted to the Circuit Court are as follows:

"On and prior to October 23, 1961, Sybil P. McAlister, a resident of Tallapoosa County, Alabama, was an employee of the Southern Bell Telephone and Telegraph Company, employed in the Traffic Department in Alexander City, Alabama, exchange. On the 23rd day of October, 1961, Sybil P. McAlister made an application for, or a request for, a leave of absence for maternity reasons, such leave to be an

extension of a leave of absence previously granted to Mrs. McAlister for personal reasons, such prior leave having begun May 20, 1961 and scheduled to end November 19, 1961, a copy of such request being attached hereto as Exhibit A and made a part hereof as fully as if set out herein. Such request for a leave of absence was for a period of one year beginning November 20, 1961, and expiring November 19, 1962.

"By instrument dated the 26th day of October, 1961, Sybil P. McAlister was informed that such request for leave of absence was granted for a period of one year as requested by her; such leave to commence November 20, 1961, and to terminate November 19, 1962. In accordance therewith, Mrs. McAlister entered upon such leave of absence for maternity reasons on November 20, 1961. At the time such request for a leave of absence was made by Sybil P. McAlister and at all subsequent times hereto material, there was in full force and effect an agreement between the Communications Workers of America and the Southern Bell Telephone and Telegraph Company; that portion of such agreement as pertains to leaves of absence being attached hereto as Exhibit B and made a part hereof as fully as if set out herein. A copy of this entire agreement is distributed to each employee of the Company. At all times material hereto the said Sybil P. McAlister was an employee of Southern Bell Telephone and Telegraph Company in the bargaining unit represented by the aforesaid Communications Workers of America.

"That on the 23rd day of October, 1961, (same day she applied for leave) and at all times subsequent thereto, the stated Company policy of Southern Bell Telephone and Telegraph Company relative to leaves of absence and particularly to maternity leaves of absence was as follows:

"The term 'Leave of Absence' refers to an authorization granted to an employee for a period of absence from the service of the company, during which absence the employee will not lose accumulated credit for seniority and employment service. A leave of absence connotes a continuity of the employment status.

"A written request from the employee for a leave of absence is required except where the absence is due to sickness. Requests for leaves are made by means of Company Form 3104, or the equivalent information may be submitted by an employee to his supervisor in a letter stating the reason for the leave and the length of absence requested. The supervisor transmits the request, with his recommendation, to the Benefit Committee, which alone has the right to grant or deny a leave, informing the employee directly as to its action on his request.

"All leaves of absence are voluntary and are granted for the period of time requested by the employee. That is, all leaves are granted at the request of the employee and the employee determines the duration of the leave or request. No attempt is made to dictate or even recommend that the employee request an initial leave or an extension of a leave for a period longer than the employee requests or desires.

"Leaves of absence may be requested and are granted for many purposes and formal leaves of absence are permitted from one month up to a variable maximum period of time in accordance with the purpose of the leave and the employee's length of service with the company. In the case of maternity leaves the maximum duration is for a two year period of time.

"The Company's policy regarding leaves of absence in all maternity

cases is generally set forth in paragraph 6.01 A 2 of the Agreement between the Union and the Company, as follows:

" 'In all maternity cases the employee shall present to the Company not later than the end of the fifth month of pregnancy a doctor's certificate stating the probable date of confinement. After the presentation of such certificate the Company shall grant the employee's request for a leave of absence if the leave is to begin not later than 60 days prior to the probable date of confinement. If the employee fails to request such a leave the Company shall place the employee on a six month's leave of absence to begin 60 days prior to the probable date of confinement.'

"The Company and the Union representing our employees have agreed that female employees shall not work for the two months' period prior to expected childbirth. When the employee requests the maternity leave of absence, it is for the two months prior to childbirth and for whatever additional time the employee herself chooses, with a possible maximum of two years. Experience indicates that as a general rule a woman should not return to work earlier than six to eight weeks after giving birth to a child.

"For maternity purposes, the female employee may according to her own needs or wishes request a maximum leave not to exceed two years, or request a short leave for a chosen period, for example, 3½ to 4 months, and later request and receive an extension, or several extensions, not to exceed the maximum combined leave time of two years.

\*    \*    \*    \*    \*    \*

"While a leave of absence affords no absolute guarantee of re-employment upon the termination of the leave, the employee on a formal leave of absence does have reinstatement rights as set forth in the agreement between the C.W.A. and Southern Bell; that portion of such agreement as pertains to reinstatement rights being attached hereto as Exhibit C (6.01C&D) and made a part hereof as fully as if set out herein. Further, if an employee of eight years or more of net credited service is not reinstated, he is entitled to a substantial termination allowance. The leave of absence also protects many valuable rights of the employees, in addition to the reinstatement rights, as follows: Seniority rights, net credited service rights, major medical insurance coverage paid for wholly by the Company, group life insurance coverage which is partially supported by employer contribution for one year, and other rights which devolve from seniority and net credited service. Net credited service, among other things, determines an employee's eligibility for, and the duration of, many benefits such as disability benefits, death benefits, eligibility for retirement and pensions and the amount of pension to be received.

"On February 23, 1962, Mrs. McAlister gave birth to a child. On April 27, 1962, Sybil P. McAlister requested of the Company that she be allowed to return to work from her leave of absence. She was informed by the Company that it was unable to give her employment at that time as no work was available for her. On April 29, 1962, Mrs. McAlister filed a claim for unemployment benefits.

"It is further agreed that, at the time Sybil P. McAlister applied for a leave of absence for maternity reasons and at all subsequent times thereto, Southern Bell Telephone and Telegraph Company was subject to the Unemployment Compensation laws of Alabama and that its employees, including Mrs. McAlister, were covered by the provisions of such law; that should the employee, Sybil P. McAlister, be entitled to un-

employment compensation benefits, she is entitled to the Sum of Three Hundred Ninety-four and no/100 Dollars, ($394.00)."

The sole question presented upon this appeal is whether or not an employee, absent from work on a leave of absence but who requests to return to work prior to the expiration of said leave and is refused work, falls within the purview of the unemployment compensation statutes so as to be entitled to benefits therefrom. This question has not heretofore been decided by the appellate courts of this State.

In order for the appellee to prevail in this cause, it must be determined that she was involuntarily unemployed as contemplated by Secs. 213 and 214 of Tit. 26, Code of Alabama, 1940, as amended. Tit. 26, Sec. 213, in pertinent part is as follows:

"Benefit eligibility conditions.—An unemployed individual shall be eligible to receive benefits with respect to any week only if the director finds that— * * * C. He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work either at a locality at which he earned wages for insured work during his base period or at a locality where it may reasonably be expected that such work may be available."

Tit. 26, Sec. 214, reads in pertinent part as follows:

"Disqualification for benefits.—An individual shall be disqualified for total or partial unemployment: * * * B. If he has left his employment voluntarily without good cause connected with such work; but he shall not be disqualified if:

"(1) He was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do and returned to that employer and offered himself for work as soon as he

was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability, and (a) the individual fails to comply with the same as soon as it is reasonably practicable so to do, or (b) upon the expiration of a leave-of-absence he shall fail to return to said employer and offer himself for work if he shall then be able to work, or, if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave-of-absence as soon as it is reasonably practicable so to do.

\* \* \* \* \* \*

"An established leave-of-absence policy shall be any leave-of-absence policy covering sickness and disability communicated to the employee by the customary means used by the employer for communicating with his employees."

It has been repeatedly held that Secs. 213 and 214 of Tit. 26, Code of Alabama, 1940, as amended, must be read and construed together for the purpose of determining one's eligibility for unemployment compensation. In Alabama Mills v. Carnley, 35 Ala.App. 46, 44 So.2d 622, 14 A.L.R. 2d 1301, this court held the following:

"We must seek the legislative intent from an act as a whole, and not from only a portion thereof. Marion County v. Middleton, 246 Ala. 464, 21 So.2d 312. While Section 213 deals with eligibility of an employee to receive benefits, and 214 deals with his qualifications therefor, the two sections are so interrelated that consideration of one necessitates a consideration of the other, and a mechanical application of the one without consideration of the other cannot lead to satisfactory conclusions."

Upon reviewing the two sections based on the facts as presented by this case, we feel that the claimant, by removing her-

self from the labor force for a specific period of time of her own choosing, does not meet the availability requirement as set forth in Sec. 213, subd. C of Tit. 26, nor do we feel that the leave of absence has expired as contemplated by the legislature so as to remove her disqualification as imposed by Sec. 214, subd. B of Tit. 26. The word "expiration" means "cessation; close; end; conclusion; termination of a contract or agreement", Webster's Twentieth Century Dictionary, Unabridged, and by definition we think the expiration of a leave of absence does not occur until after the period for which the leave of absence was granted.

Only one case has come to our attention that deals precisely with the question presented on this appeal. The Supreme Court of Arkansas in Southwestern Bell Telephone Co. v. Thornbrough, 232 Ark. 929, 341 S.W.2d 1, denied benefits to claimant on facts strikingly similar to the facts before this court. In the Thornbrough case, supra, the claimant was required to take a leave of absence of one year for pregnancy. Arkansas had a specific statute covering unemployment benefits following pregnancy which states in effect that a woman following birth of a child is presumed to not be available and hence ineligible for unemployment benefits after the birth until she has secured new work and has worked for a minimum period of thirty days. A statutory disqualification of that rule is that the thirty day new work test should not apply to an individual who had obtained a leave of absence from her employer for pregnancy and applies for reinstatement with her employer at the termination of such leave but is not reinstated by such employer. Ark.Stats., Sec. 81–1106(e) (2) as amended. The decisive language in the Arkansas Statute is very similar to that contained in the provisions of Sec. 214, subd. B(1) (b), Tit. 26, Code of Alabama, 1940, as amended. There can be no material distinction between the words "termination of such leave" as used in the Arkansas Statute and "expiration of a leave of absence" as used in the Alabama Statute.

In interpreting the meaning of "termination of such leave", the Arkansas Supreme Court held the following:

"The statute says *termination of such leave*. In the present case, Mrs. Mills secured a leave of absence on July 29, 1956, at which time she was approximately seven months pregnant. The termination date of her leave was set at July 28, 1957, one year later. Mrs. Mills' child was born on September 26, 1956. About October 31, 1956, she applied for reinstatement which was denied and on December 5, 1956, she was declared eligible for unemployment compensation. At the time she was declared eligible, her leave of absence still had over seven months to run. Since her leave of absence had not terminated, it was error for the Commissioner to declare her eligible for benefits. The Commissioner argues that the year's leave of absence is an unreasonable length of time. Under the present circumstances, we do not think so. The present policy of the company of one year leave of absence for pregnancy was set up long before enactment of the Employment Security Act as a practical solution to a recurring employee problem and not as a guise to avoid unemployment payments. We cannot say that a year's time is unreasonable when all the attendant circumstances of giving birth to a child and caring for it the first few months after birth are taken into consideration."

The facts in the instant case are different from those in the Thornbrough case, supra, in that the employee of Southwestern Bell was required to take a minimum leave of absence of one year while the appellee here as an employee of Southern Bell could elect to take a leave of absence for as little as a few months to a maximum of two years.

By voluntarily removing herself from the labor market for a specified period, the claimant was therefore, prima facie, not available for work within the purview of Sec. 213, Tit. 26, Code of Alabama, 1940, as

amended prior to the expiration of such leave on November 19, 1962.

For the reasons herein discussed and under the principles enunciated in the case of Haden v. Lee's Mobile Homes, Inc., 41 Ala. App. 376, 136 So.2d 912, this cause is hereby reversed and a judgment rendered for the appellant, the defendant in the court below.

Reversed and rendered.