412 So.2d 1225 (1981)
William J. DAVIS, as Director of the State of Alabama Department of Industrial Relations and Black Diamond Coal Company
v.
James W. PICKETT, Amos Boyd, Leodis Majors, and Johnson T. Morse
Civ. 2637.
Court of Civil Appeals of Alabama.
July 22, 1981.
Rehearing Denied August 19, 1981.
*1226 George Cocoris, Gen. Counsel, and Frank D. Marsh, Asst. Gen. Counsel, Montgomery, for appellant Director, Dept. of Indus. Relations.
Harry L. Hopkins and Carol A. Smith of Lange, Simpson, Robinson & Somerville, Birmingham, for appellant Black Diamond Coal Co.
William E. Mitch and Earl V. Brown, Jr., of Cooper, Mitch & Crawford, Birmingham, for appellees.
BRADLEY, Judge.
This is an unemployment compensation case.
On December 1, 1977 Black Diamond Coal Company (hereinafter Black Diamond), through one of its supervisory personnel, distributed a termination slip to James W. Pickett, Amos Boyd, Leodis Majors, and Johnson T. Morse notifying them that, effective immediately, they were being "laid off" from their jobs at its coal washer number nine located at West Blocton, Alabama. Appellees are members of United Mine Workers of America Local 7578. Black Diamond was a signatory to the National Bituminous Coal Wage Agreement of 1974 which, among other things, governed the terms and conditions of employment by Black Diamond of the members of Local 7578. The agreement provided that it would remain in full force and effect until December 6, 1977. Burgess Mining and Construction Company was also a signatory party to this agreement and its employees were represented by Local 7578. In October of 1977 it became increasingly probable that the rank and file members of Local 7578 would go out on strike after December 6, 1977 since protracted negotiations between the United Mine Workers of America and the Bituminous Coal Operators Association had produced little progress toward agreement on the terms of a new employment contract. In late November 1977 Burgess's management began to winterize its coal mining equipment and facilities to protect them from damage during the anticipated strike. In conjunction with these measures Burgess halted further strip mining of coal and began to ship out all the coal which it had previously mined and stockpiled on its properties. All of the coal *1227 washed at Black Diamond's coal washer number nine came from Burgess's strip mining operations. All of Burgess's coal which had been shipped to Black Diamond's number nine washer had been cleaned before Black Diamond closed down its operations at the washer on December 1, 1977.
After receiving the termination slips, appellees did not return to work at the washer until three days after Local 7578 and Black Diamond executed a new employment contract on March 28, 1978, nor did they attempt to secure temporary or permanent employment commensurate with their training and experience with other employers at any time between December 1, 1977 and March 28, 1978 by directly applying for work with potential employers. Instead, they filed separate claims for unemployment compensation, registered for work at a state unemployment office, and, with the exception of appellee Johnson Morse, continued to periodically report to that office in an effort to obtain work with other employers. It is undisputed that appellees were able to work at all times from the moment they were "laid off" by Black Diamond until the time that they returned to work for Black Diamond.
On January 30, 1978 the company's vice president of coal operations, Richard B. Johnson, addressed a separate letter to each appellee notifying him "that work is available at our West Blocton preparation plant and has been since December 5, 1977." Mr. Johnson requested each appellee "to report to work at your regular occupation at 7:00 A.M. Monday, February 6, 1978." Each appellee, save Amos Boyd, reported for work at the number nine washer on February 6 shortly before 7:00 a.m. Mr. Boyd did not report for work until "somewhere between 9 and 9:30." All appellees testified that the entrance gates to the washer were locked on that February morning. Each appellee, with the exception of Mr. Morse, stated that he did not see Mr. Neal Meyers, one of appellees' supervisors at the number nine washer, or any other management personnel at the washer at 7:00 a.m. on February 6. No appellee stayed for more than a few minutes at the gates to the washer before concluding that Black Diamond had no work available for him to perform on that day. Only one appellee thereafter applied for any type of work with the company before it signed the March 28, 1978 employment contract. Johnson Morse appeared at the washer on the morning of February 7 and discussed the possibility of returning to work there with Mr. Meyers. Meyers told Morse that maintenance work was available at the washer but Morse declined to perform such work for the company. Morse did not thereafter apply for work with Black Diamond until March 1978.
After a hearing the trial court found that Black Diamond gave appellees layoff notices in anticipation of an industry strike, that appellee Morse refused reemployment on February 7, 1978, and that all appellees returned to work on March 31, 1978. The court then held that Morse was entitled to benefits from December 1, 1977 to February 7, 1978 and that Pickett, Boyd and Majors were entitled to benefits from December 1, 1977 until March 31, 1978. After a denial of its motion to vacate the judgment, the Department of Industrial Relations (hereafter the Department) appealed to this court. Black Diamond also appealed to this court.
Appellants say here that the trial court erred in finding that appellees were available for work during their unemployment and in holding that appellees' unemployment was not due to a labor dispute in active progress.
Section 25-4-77 of the 1975 Code permits an award of unemployment compensation benefits to an unemployed individual if:
(1) He has made a claim for benefits....
(2) He has registered for work at, and thereafter continued to report at, an unemployment office ....
(3) He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work either at a locality at which he earned wages for insured work during his *1228 base period or at a locality where it may reasonably be expected that such work may be available.
Generally, an individual asserting a claim for unemployment benefits under § 25-4-77 bears the burden of establishing his right to such benefits by proving through competent evidence that he has satisfied each of the conditions precedent, detailed above, to obtaining such benefits. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496 (1948). In the case at bar the Department contends that appellees failed to prove that they were available to perform work which they were qualified to perform by past experience or training either at Black Diamond or at any other "locality where it may reasonably be expected that such work may be available," and that, therefore, they are not entitled to unemployment compensation. We cannot agree.
In Director, State Department of Industrial Relations v. Bishop, Ala.Civ.App., 373 So.2d 1119, cert. denied, Ala., 373 So.2d 1121 (1979), this court found that a claimant for unemployment compensation benefits was "available for work" within the meaning of § 25-4-77 (3) even though the only evidence of such availability was the claimant's own testimony that she (1) had sought similar employment "in the area from the unemployment office" and (2) was ready to take a job.
In the instant case each appellee testified, in substance, that he had filed a claim for unemployment benefits, that he had registered for work with the unemployment office, and that from December 1, 1977 to March 31, 1978 he was physically and mentally able to perform work of a character which he was qualified by past experience or training to perform. In addition, each appellee, save Johnson Morse, stated affirmatively that he had continued to report for work at the unemployment office after he had registered for work there. We believe such evidence sufficient to make out a prima facie case that appellees were available for work under § 25-4-77(3) unless appellants adduced further testimony contradicting or otherwise countering such evidence of availability for work. Id.
The record in this case does not convince us that appellants ever contradicted or countered appellees' evidence of availability for work with evidence that appellees did not seek employment similar to that in which they were engaged on December 1, 1977 at washer number nine from an unemployment office or that, with the exception of Johnson Morse, they were not ready to take a job at any time after they were "laid off" at the washer. Hence, the trial court properly concluded that Pickett, Boyd, and Majors were eligible for benefits. However, in view of the fact that there is no evidence in the record that appellee Johnson Morse continued to report for work at the unemployment office after he registered for work at same, we believe the circuit court erred in concluding that Mr. Morse was eligible for benefits. See generally Department of Industrial Relations v. Tomlinson, supra.
Even though we have concluded that appellees Pickett, Boyd, and Majors are eligible to receive unemployment compensation benefits pursuant to § 25-4-77(3), it is now necessary to decide whether these appellees are disqualified from receiving benefits under § 25-4-78, Code 1975. The courts of this state have consistently held that the two sections of the Code, i.e. §§ 25-4-77 and 25-4-78, must be construed together to determine a claimant's eligibility for unemployment compensation. Southern Bell Telephone & Telegraph Co. v. Department of Industrial Relations, 42 Ala.App. 351, 165 So.2d 128 (1964); accord, State, Department of Industrial Relations v. Thomas, 55 Ala. App. 712, 318 So.2d 739 (1975).
Black Diamond contends that appellees' unemployment was caused by a labor dispute in active progress at washer number nine and that they should have been denied compensation benefits. Section 25-4-78(1), Code 1975 provides:
An individual shall be disqualified for total or partial unemployment:

*1229 (1) Labor dispute in place of employment. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For the purposes of this section only, the term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.
For an unemployment compensation claimant to be disqualified by § 25-4-78(1), five separate and distinct conditions must coincide, namely (1) his unemployment must be directly due, (2) to a labor dispute, (3) in active progress, (4) in the establishment, (5) in which he was last employed. Tennessee, Coal, Iron & Railroad v. Martin, 33 Ala.App. 502, 36 So.2d 535, aff'd, 251 Ala. 153, 36 So.2d 547 (1948).
In the present case the trial court awarded unemployment benefits to appellees even though it specifically found that Black Diamond gave them "their lay off notices in anticipation of an industry strike." These two aspects of the court's judgment are inconsistent. If appellees were indeed given their layoff notices in anticipation of a coal miners' strike, then their unemployment would in this instance apparently be directly due to a labor dispute in active progress at the place where they were employed, i.e. Black Diamond's washer number nine, and they should not have received any compensation benefits. If the appellees were given their layoff notices because of a lack of work, then the trial court's judgment awarding benefits contains an implicit finding that appellees were not disqualified from receiving those benefits.
Because of this obvious inconsistency, the aspect of the trial court's judgment implicitly finding that appellees were not disqualified from receiving unemployment compensation benefits is erroneous and must be reversed.
That aspect of the judgment holding that appellees Pickett, Boyd and Majors were eligible for benefits is affirmed; that aspect of the judgment holding that appellee Morse was eligible for benefits from December 1, 1977 to February 7, 1978 is reversed; and that aspect of the judgment holding that appellees were not disqualified from receiving benefits is also reversed. The cause is remanded so that the trial court can make findings of fact and conclusions of law relating to the disqualification of appellees to receive unemployment compensation benefits that will be consistent with its judgment.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
HOLMES, J., concurs.
WRIGHT, P. J., dissents.
WRIGHT, Presiding Judge, dissenting.
I must dissent from the action of my brothers of the court in remanding the case to the trial court for further consideration. I would reverse the judgment of the court because of disqualification under § 25-4-78(1). The material finding of fact of the trial court in paragraph 5 is that plaintiffs were laid off on December 1, 1977. There were negotiations in progress on a new contract between the coal industry, of which Black Diamond was a member, and the United Mine Workers Union, to which plaintiffs belonged. The Industry-Union contract in force on December 1 was to expire at 12:01 A.M., December 6, 1977. The employer gave plaintiffs their layoff notice in anticipation of an industry-wide strike by the UMW on December 6. These facts are undisputed.
Additional undisputed evidence was that negotiations had been in progress for more than four months and there was every reasonable expectation that agreement on a new contract was not going to be reached *1230 before midnight December 5. There was no dispute that it was union policy that there would be no work without a new contract. There was no contract by midnight, December 5, and a nationwide coal industry strike occurred on December 6 at 12:01 A.M. and continued until March 31, 1978.
The undisputed facts, including the facts found by the court, require disqualification under the statute and its construction and application in the cases, Dept. of Industrial Relations v. Walker, 268 Ala. 507, 109 So.2d 135 (1959); Ex parte Pesnell, 240 Ala. 457, 199 So. 726 (1940); Dept. of Industrial Relations v. Savage, 38 Ala.App. 277, 82 So.2d 435 (1955). The facts in those cases are remarkably similar to those in this case. The court said in Walker:
[W]e find no error in the Court of Appeals holding that the direct cause of the unemployment was the labor dispute, nor do we find error in the holding that under the evidence, the employer was authorized in anticipation of a strike, to take proper measurers for protection of its property from damage during a pendency of the strike.
Again, there is no dispute that the layoff of its employees by Black Diamond was because its supplier of coal for washing (Burgess Mining) had shut down its mining and winterized its equipment in anticipation of the industry-wide strike by plaintiffs' union. There is no dispute but that Black Diamond had no coal to wash and had been informed it would not receive any more when it drained its pumps, shut down its washing plant and laid off its employees. All of this, as found by the trial court, was in anticipation of the impending strike by all UMW members, including the plaintiffs. Applying the statute and the case law, there was a labor dispute in active progress in the industry and establishment in which plaintiffs were employed on December 1, 1977, and their layoff and unemployment were directly due to such dispute. I would hold that the trial court erred in applying the law to its own finding of fact and reverse and render for disqualification.
I perceive no reason for deciding the issue of availability for work under the statute. However, I would observe that in spite of the obvious game that was played by both the employer and the employees, there was no work available since there was no coal. Neither were the employees available for work at Black Diamond or anywhere else in the coal industry. The testimony was very clear that the employees were long-time UMW members and adherents to the UMW creed"No contract-no work." There was testimony by each of them to that point. There was also testimony that the employees did not seek other employment because they had a job at Black Diamond which they expected to return to when the new contract was signed. The letter from the company advising the employees of availability of work in February 1978 and the response of the employees in going to the locked back gate of Black Diamond and remaining "a few minutes" were merely examples of each playing games with the other.
I dissent.